# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JAMES R. RECKER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARY LOU REYNOLDS**
Terre Haute, Indiana

**EDWARD A. McGLONE**
Terre Haute, Indiana

**FILED**
Jul 03 2012, 9:37 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JULIE WINSLOW, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  84A04-1109-DR-518 |
| | ) | |
| LARRY D. FIFER, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Matthew L. Headley, Special Judge
Cause No. 84D02-0107-DR-5524

**July 3, 2012**

**OPINION FOR PUBLICATION**

**BAKER, Judge**

Julie Winslow (Mother) and Larry Fifer (Father) are the parents of two academically gifted daughters, twenty-one year-old J.F., who attends Indiana State University and nineteen-year-old A.F., who attends Purdue University. Both girls have received scholarships which have left the balance of their tuition and other fees to less than $2,000 per year. Nevertheless, Mother, who took A.F. to Harry Potter's World at Universal Studios in Florida for a week to celebrate her SAT scores, refused to comply with a court order requiring her to reimburse Father $1500 for her oldest daughter's college tuition for the 2010-2011 academic year. Mother refused to do so because she did not know where her oldest daughter was living and apparently did not pick up the phone to contact Father or their daughter to ask. Had she done so, Mother would have learned that Father required J.F. to live at home because of a prior court order. After sending Mother J.F.'s class list, grades, and an itemized list of expenses, and after asking her to reimburse him $1,500 for the academic year with no response, Father eventually filed a contempt action against Mother seeking $750 in attorney fees and asked the trial court to order her to pay a proportionate share of A.F.'s college expenses.

The trial court found Mother in contempt for failing to reimburse Father $1,455.48 for J.F.'s college expenses for the 2010-11 academic year and ordered her to pay said sum within twenty days of the date of the trial court's order. The trial court further advised Mother that there were several sanctions available to it and that it was electing to require Mother to pay Father's attorney fees. Lastly, the trial court ordered Mother to

2

pay the same percentage of A.F.'s educational expenses as she had been ordered to pay for J.F.'s education expenses. The trial court noted that A.F. was potentially saving her parents $90,000 over the following four years.

Mother now appeals the trial court's judgment. Specifically, Mother contends that the trial court erred in 1) computing her proportionate share of educational expenses, 2) holding her in contempt, and 3) ordering her to pay Father's attorney $750 as a contempt remedy. Finding no error, we affirm the judgment of the trial court.

FACTS

Mother and Father's marriage was dissolved in February 2002. They have two daughters, J.F., born on March 2, 1991, and A.F., born on May 5, 1993. In February 2009, the trial court held a hearing on Mother's Petition to Modify Child Support and Declare [J.F.] an Adult and Father's Petition for Post-High School Educational Assistance for Minor Children and to Modify Child Support. In March 2009, the trial court denied Mother's request to emancipate J.F. Rather, the trial court concluded that J.F. had the aptitude and ability to attend Indiana State University (ISU) and that an order for post secondary educational expenses was proper. Specifically, the trial court ordered J.F. to pay one-third of her college expenses. The trial court further ordered both parents to divide the remaining two-thirds of J.F.'s educational expenses, with Father to pay 62.81% and Mother to pay 37.19%. Father apparently agreed to pay the parents' two-thirds share to the university, and Mother was ordered to then reimburse Father for her 37.19% contribution.

3

In July 2010, the parties mediated a modification of child support. In August 2010, the trial court entered an order approving a mediated modification of child support. Specifically, the mediated modification agreement provided that J.F. was emancipated for the purposes of weekly child support, but that the parties would still be obligated to pay J.F.'s college expenses pursuant to the trial court's March 2009 order. Mother was also still obligated to pay $45.00 per week in child support for her younger daughter, A.F.

In the fall of 2010, J.F. registered for classes at ISU, where she received an Honors Scholarship. The total cost for her first semester, including the scholarship, was $2,227. Father paid for parents' share of the expenses and requested that Mother reimburse him $801.72 pursuant to the trial court's March 2009 order. Father provided Mother with supporting documentation, including a list of J.F.'s courses and receipts for all payments. Mother did not respond to Father's request.

In December 2010, Father sent another written request for reimbursement to Mother. Father also sent Mother a copy of J.F.'s fall semester grades and advised Mother that J.F. had maintained a 3.64 grade point average. In addition, Father sent Mother a copy of J.F.'s spring 2011 courses. Father asked Mother if there was a reason that she was not paying him, but Mother did not reply.

In February 2011, Father asked Mother when he could expect to receive payment for J.F.'s fall 2010 college expenses. He also included an itemized list of J.F.'s spring 2011 college expenses, and asked Mother to reimburse him $653.76 for the spring

4

semester.  Father sought a total reimbursement of $1455.48 for J.F.'s first year at ISU. Again, Mother did not reply.

When Mother failed to respond to Father's requests for payment, Father filed in May 2011 an "Affidavit for Rule to Show Cause" wherein he asked the trial court to enter an order requiring Mother to appear and show cause why she should not be punished for contempt of court for failing to comply with the trial court's March 2009 order.  Father also asked the court to order Mother to pay the $750.00 in legal fees he incurred for the prosecution of the Affidavit for Rule to Show Cause.  In addition, Father filed a "Petition for Post Secondary Educational Expenses" for A.F., who was graduating from high school with honors.  Father asked the trial court to order Mother to pay the same percentage of A.F.'s educational expenses as she had been ordered to pay for J.F.'s educational expenses.

A hearing on the petition and affidavit revealed that Father works at a steel factory in Terre Haute where he earns $120,000 per year, and Mother works for an engineering firm at the University of Cincinnati where she earns $71,000 per year.  The evidence further revealed that J.F. signed a lease to rent an apartment with her boyfriend in April 2010.  J.F. explained that she signed the lease because the apartment was only $410 per month, which was a "ridiculously great price," and she and her boyfriend did not want to lose it.  Tr. p. 45.  When J.F. told Father what she had done, Father told her that she was not allowed to move into the apartment until he discussed it with his lawyer because he was under a court order that included child support.  J.F.'s boyfriend moved into the

5

apartment, and J.F. lived at Father's house until the trial court issued its order emancipating J.F. for the purpose of weekly child support.

Testimony at the hearing further revealed that A.F. graduated from West Vigo High School as class valedictorian in 2011, missed only one math question and two English questions on the SAT, and planned to study engineering at Purdue University. She received substantial and prestigious scholarships, including a $10,000 Trustee Scholarship, a $10,000 Stamps Scholarship, and a $2500 National Merit Scholarship for her freshman year. A.F. testified that the scholarships did not cover the entire cost of her freshman year, and there would be an additional cost for orientation, chemistry lab fees, and the engineering program.

Mother testified when she received the bill from Father for J.F.'s educational expenses, she sent it to her attorney because she did not see room and board fees on the bill. Mother did not believe that J.F. was living with Father. According to Mother, she did not reimburse Father for J.F.'s educational expenses because she did not know where J.F. was living. She apparently did not telephone Father to see where J.F. was living because she has not talked to Father in five years. Mother also apparently did not telephone J.F. because there is no evidence in the transcript that Mother maintains any type of contract with her oldest daughter. Mother further testified that she recognized A.F.'s SAT results with the "trip of a lifetime," which was a one-week stay at Harry Potter World at Universal Studios in Florida during the 2010 holidays. Mother also

6

attempted to introduce into evidence a photograph of Mother and A. F. together in the Bahamas.

Following the hearing, the trial court issued an order finding Mother in contempt for failing to pay her proportionate share of J.F.'s educational expenses, which was $801.72 for the fall 2010 semester at ISU and $653.76 for the spring 2011 semester, for a total of $1,455.48. The trial court ordered Mother to pay this sum to Father within twenty days of the date of the order. The court also ordered Mother to pay $750 of Father's attorney fees as a contempt remedy. Lastly, the trial court found that A.F. was planning to attend Purdue University and that her $24,000 per year tuition and room and board would only cost $1,500 because of A.F.'s exceptional academic achievements and scholarships. The court ordered Mother to pay $575.70 of A.F.'s fall 2011 tuition, and Father to pay $972.30. Mother appeals.

DISCUSSION AND DECISION

I. Computing the Proportionate Share of Educational Expenses

Mother first argues that the trial court erred in computing her proportionate share of educational expenses for her daughters. In reviewing orders for apportionment of college expenses, we do not weigh the evidence or determine credibility. Warner v. Warner, 725 N.E.2d 975, 978 (Ind. Ct. App. 2000). Rather, we consider only the evidence most favorable to the judgment. Id. We will affirm the trial court unless its order is clearly erroneous. Id. The decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances which were before the trial court. Id.

7

Pursuant to Indiana Code section 31-16-6-2, the trial court has the authority and discretion to award post-secondary educational expenses and to determine the amount of such an award. See id. The trial court should consider post-secondary education to be a group effort and should weigh the ability of each parent to contribute to payment of the expense as well as the ability of the student to pay some part. Id. The trial court must determine what constitutes educational expenses, and the guidelines state that this will generally constitute tuition, books, lab fees, supplies, student activity fees, and the like. Id. Room and board are also included when the student lives away from the custodial parent during the school year. Id.

Further, a "rough proportionality" has been required in the apportionment of college expenses between parents and children. Id. A requirement of rough proportionality is not a requirement of precise parity, but deviations from rough proportionality require a finding that such an apportionment would be unjust. Id. Absent such specific findings, we have found that an apportionment of college expenses which was not roughly proportionate to parental resources was clearly erroneous. Id.

Here, Mother specifically argues that the trial court erred in computing her proportionate share of educational expenses for her daughters because it "improperly refused to consider the effect of educational tax credits obtained by Father . . . ." Appellant's Br. p. 3. However, Mother offered no evidence or offer of proof at the hearing concerning an educational tax credit benefiting Father. Because Mother did not make an offer of proof, this issue was not properly preserved and is waived. Dowdell v.

8

State, 720 N.E.2d 1146, 1150 (Ind. 1999) (concluding that the failure to make an offer of proof resulted in waiver of the alleged error).

Waiver notwithstanding, we note that a trial court may consider the consequences of an educational tax credit if such evidence is tendered. In this case, however, even if Mother had tendered such evidence, the credit might have been de minimis based on her daughters' minimal educational expenses. Under such circumstances, the trial court would not have abused its discretion in failing to consider it.

Mother also argues that the trial court erred in computing her share of educational expenses because the court placed no limitations on A.F. For example, according to Mother, the trial court did not place a limit on the number of semesters A.F. may attend school at her parents' expense. Further, Mother points out that there is no mention of the level of academic performance required by A.F. to remain eligible for her parents' assistance. However, as Father points out, Mother did not raise these limitations at the hearing. This issue is therefore waived as well. See Benton Cnty. Remonstrators v. Bd. of Zoning Appeals of Benton Cnty., 905 N.E.2d 1090, 1096 (Ind. Ct. App. 2009) (holding that a party waives appellate review of an issue unless the party raises the issue before the trial court). Further, we agree with Father that the trial court may have found such limitations unnecessary where A.G. was the West Vigo High School class valedictorian, missed only one math question and two English questions on the SAT, and received three scholarships to Purdue. The trial court did not err in computing Mother's proportionate share of educational expenses for her daughter.

9

## II.  Contempt

Mother also argues that the trial court erred in holding her in contempt.  The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court.  Jones v. State, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006).  We will reverse the trial court's determination only if the court has abused its discretion.  Id.  A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law.  Id.

Indirect contempt, or civil contempt, is the willful disobedience of any lawfully entered court order of which the offender has notice.  City of Gary v. Major, 822 N.E.2d 165, 169 (Ind. 2005).  The objective of a contempt citation is not to punish but to coerce action for the benefit of the aggrieved party.  Mossner v. Mossner, 729 N.E.2d 197, 199-200 (Ind. Ct. App. 2000).  Thus, any type of remedy in civil contempt proceedings must be coercive or remedial in nature.  Id. at 200.

Here, the trial court ordered Mother to reimburse Father her proportionate share of J.F.'s educational expenses and Mother failed to comply with the order.   She does not argue that the order was not lawful or that she had no notice of it.  Rather, she contends that she disregarded it because Father enjoyed a tax credit and she did not know where J.F. was living.  These are not valid reasons for disregarding the trial court's order.  In short, the trial court did not abuse its discretion in finding Mother in contempt.

## III.  Attorney Fees

10

Lastly, Mother argues that the trial court erred in ordering her to pay $750 of Father's attorney fees as a remedy for her contempt. The trial court has inherent authority to award attorney fees for civil contempt. Crowl v. Berryhill, 678 N.E.2d 828, 831 (Ind. Ct. App. 1997).

Mother first contends that the finding of contempt was not supported by the evidence and the subsequent award of attorney fees for that contempt was an abuse of discretion. This argument fails, however, because we affirmed the finding of contempt.

Mother further contends that the trial court erred because it awarded "the entire cost of the [attorney] fees for all matters heard at the hearing of August 5, 2011 to Father without proportioning [attorney] fees which were particular to the contempt proceeding only." Appellant's Br. p. 8. However, our review of the evidence reveals that in his Affidavit for Rule to Show Cause, Father averred that "due to the willful failure and refusal of [Mother] to comply with the terms of the Court's Order of March . . . 1999 . . . Father has incurred fees of $750.00 for the prosecution of this Affidavit for Rule to Show Cause, in order to require the [Mother] to comply with the Court's Order as pertains to the payment of post secondary educational expenses . . . ." Appellant's App. p. 53. Clearly, the $750 was proportioned to the contempt proceeding. The trial court did not abuse its discretion in ordering Mother to pay $750 of Father's attorney fees.

Mother and Father have been blessed with two daughters who excel academically. Indeed, both have received scholarships such that their college expenses are minimal. Nevertheless, although Mother has the financial means, she has chosen litigation over

11

paying her proportionate share of these minimal expenses or even communicating with her children and Father.  No one wins in such situations, and we strongly recommend that Mother consider this in the future.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.