Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2013, 9:26 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID A. GUERRETTAZ**
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**MARK R. RAMSEY**
Ramsey Law Office
Tell City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PENNI WILLIAMS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1210-DR-493 |
| | ) | |
| JOHN MARK WILLIAMS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Robert R. Aylsworth, Judge
Cause No. 87D02-9503-DR-38

**May 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Penni Williams ("Mother") appeals the post-dissolution court's order denying her cross-petition requesting the court to order the payment of college expenses, following a hearing. Mother presents a single issue for review, namely, whether the post-dissolution court abused its discretion when it denied her request for John Mark Williams ("Father") to contribute to the college expenses of their son, Blake Williams ("Blake").[1]

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Mother and Father were married on October 4, 1991, and Blake, their only child, was born on October 23, 1992. Mother and Father separated in 1993, and she filed a petition for dissolution in 1995. The court entered a dissolution decree ("Decree") in September 1994 and a judgment and order on other issues ("Custody Order"), including custody and visitation, in October 1995. The court awarded joint legal custody to the parents, physical custody to Mother, and visitation to Father, and it ordered Father to pay child support. Child support was modified by court order a few times over the years, but none of those orders provided for educational support.[2]

Mother and Blake resided in Tennyson throughout Blake's childhood. Father lived in Chicago until 1997 and then moved back to southern Indiana. Father exercised visitation with Blake following the divorce, although not as frequently as provided in the

---

[1] The trial court also granted Father's request to terminate child support under Indiana Code Section 31-16-6-6(a), but Mother does not appeal that part of the order.

[2] The only evidence of the modification orders is found in the Chronological Case Summary in Mother's Appendix. None of the entries specify educational support, and neither party asserts that there was a prior order for such support.

custody order, and his only overnight visitation occurred when Blake was three years old. The frequency of visitations eventually decreased to include only Christmas, Easter, and Blake's birthday, and, after 2002, visitations ceased altogether. Father continued to buy birthday and Christmas gifts for Blake until 2005. At Christmas 2005, Blake received his last gift from Father.

Father and Blake next had contact in 2006, when Father asked his counsel to contact Mother's counsel about resuming visitation. In response, Blake called Father. Father told Blake that "the law" required him to pay child support, but it also required Blake to spend time with Father. Transcript at 10. No visitations followed after that call. Father and Blake also met unexpectedly at a horse show in 2010. They had a brief conversation, but they had no further contact with each other until the hearings in this matter. Except for these contacts, Father and Blake have not communicated with each other in any form since 2005.

Blake graduated high school in May 2011, took courses from Ivy Tech over the summer, and started as a freshman at Oakland City University in September 2011, studying human biology with plans to become a nurse practitioner. He received an athletic scholarship from Oakland City University, which pays his full tuition. To pay for his books, room, and board, Blake has obtained student loans, he works eight to ten hours per week at a hardware store during the school year, and he mows lawns in his hometown during the summer.

In October 2011, Father filed a petition to modify, stating in part:

3.     Blake Williams has graduated from [h]igh [s]chool and is now attending Oakland City University. Blake will no longer be residing

at home with [Mother] during the school period. Support for Blake should therefore be modified as of the date Blake started college.

4.      A post[-]secondary support worksheet should be prepared for Blake.

Appellant's App. at A12. In November, Mother filed a cross-petition, asking the post-dissolution court to "modify" the support order "pertaining to college expenses, medical bills and insurance costs." Id. at A14.

On October 2, 2012, three weeks shy of Blake's twentieth birthday, the post-dissolution court held an evidentiary hearing on the cross-petitions. Mother, Father, Blake, and others testified at the hearing. At the close of evidence, the court ruled as follows:

> First of all, the Court would enter and make the following findings. The only real relationship between the father and Blake is biological. They are clearly strangers to one another for all intents and purposes. The age of emancipation as of July 1st, 2012, is 19 year[s] of age—not 21 years of age, and Blake is emancipated. There is nothing by law to compel any relationship between the father and son at this point, as Blake was emancipated on July 1st, 2012, under what's commonly referred to as "the new law." Each is an adult man and each should support himself. The Court will not order the father to pay anything more than he has already paid for Blake. The Court is not assessing fault; I don't think that's even important now. I think under the circumstances, with the total lack of relationship throughout the years between the father and the son, it would be an abuse of discretion for the Court to order the father to continue to pay, understanding that his legal obligation to support Blake terminated under the new law as of July 1st, 2012, to order him to pay anything further toward Blake's support regarding college expenses or otherwise.

Transcript at 139. The court then denied Mother's cross-petition for educational support but ordered Father to pay part of Mother's attorney fees. Mother now appeals.

## DISCUSSION AND DECISION

Mother contends that the post-dissolution court abused its discretion when it denied her motion requesting the court to order Father to contribute to Blake's college expenses. Specifically, Mother asserts that the court made no finding that Blake had repudiated his relationship with Father, that there is no evidence to support a finding of repudiation, and that the 2012 revision to Indiana Code Section 31-16-6-6(a) does not alter the court's ability to award educational support. We consider each argument in turn.

Pursuant to Indiana Code Section 31-16-6-2, the trial court has the authority and discretion to award post-secondary educational expenses and to determine the amount of such an award. Winslow v. Fifer, 969 N.E.2d 1087, 1092 (Ind. Ct. App. 2012) (citation omitted), trans. denied. That statute provides, in relevant part:

> The child support order or an educational support order may also include, where appropriate:
>
> > (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
> >
> > > (A) the child's aptitude and ability;
> > >
> > > (B) the child's reasonable ability to contribute to educational expenses through:
> > >
> > > > (i) work;
> > > >
> > > > (ii) obtaining loans; and
> > > >
> > > > (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
> > >
> > > (C) the ability of each parent to meet these expenses[.]

5

Ind. Code § 31-16-6-2(a). We have also described the basis for post-dissolution educational support orders as follows:

> Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

Scales v. Scales, 891 N.E.2d 1116, 1119 (Ind. Ct. App. 2008) (citing McKay v. McKay, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994) (citations omitted)); see also Svenstrup v. Svenstrup, 981 N.E.2d 138, 143 (Ind. Ct. App. 2012). However, under certain circumstances, repudiation will obviate a parent's obligation to pay certain expenses for a child, including college expenses. Scales, 891 N.E.2d at 1119. Repudiation of a parent is "a complete refusal to participate in a relationship with his or her parent." Id. (internal quotation marks and citation omitted).

We review a trial court's order regarding the payment of post-secondary educational expenses for an abuse of discretion. See Hirsch v. Oliver, 970 N.E.2d 651, 662 (Ind. 2012). We affirm the trial court unless the decision is against the logic and effect of the facts and circumstances before the trial court. Id. "We place a strong emphasis on trial court discretion in determining child support obligations and regularly acknowledge the principle that child support modifications will not be set aside unless they are clearly erroneous." Svenstrup, 981 N.E.2d at 143 (internal quotation marks and

6

citation omitted). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

But where, as here, a trial court makes specific findings upon its own motion, a general judgment will control as to the issues upon which the court has not found and the specific findings control only as to the issues they cover.[3] In re Marriage of Snemis, 575 N.E.2d 650, 652 (Ind. Ct. App. 1991). Thus, it may not be necessary that each and every special finding be correct, and even where one or more special findings are clearly erroneous, the judgment may be affirmed if the judgment is supported by other findings or is otherwise supported by the record. Where, as here, special findings are entered sua sponte, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. Id. While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the

---

[3] Although the post-dissolution court did not issue a written order, the court announced the reasons for its ruling at the conclusion of the hearing.

7

findings to the evidence of record to determine if the result is against the facts and circumstances before the court. Id.

Additionally, Mother appeals from a negative judgment. We will reverse that decision only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. Knauff v. Hovermale, 976 N.E.2d 1267, 1269 (Ind. Ct. App. 2012) (citation omitted).

Here, Mother first contends that the post-dissolution court made no finding that Blake had repudiated his relationship with Father and, further, in any event, that there is no evidence to support a finding of repudiation. Again, in the oral order denying Mother's request for educational support, the post-dissolution court stated:

> The only real relationship between the father and Blake is biological. They are clearly strangers to one another for all intents and purposes. The age of emancipation as of July 1st, 2012, is 19 year[s] of age—not 21 years of age, and Blake is emancipated. There is nothing by law to compel any relationship between the father and son at this point, as Blake was emancipated on July 1st, 2012, under what's commonly referred to as "the new law." Each is an adult man and each should support himself. The Court will not order the father to pay anything more than he has already paid for Blake. The Court is not assessing fault; I don't think that's even important now. I think under the circumstances, with the total lack of relationship throughout the years between the father and the son, it would be an abuse of discretion for the Court to order the father to continue to pay, understanding that his legal obligation to support Blake terminated under the new law as of July 1st, 2012, to order him to pay anything further toward Blake's support regarding college expenses or otherwise.

Transcript at 139 (emphasis added).

While not stated in terms of "fault," the definition of repudiation requires a finding that the child has "complete[ly] refus[ed] to participate in a relationship with his or her parent." Scales, 891 N.E.2d at 1119. The post-dissolution court made no finding

8

regarding Blake's willingness or unwillingness to engage in a relationship with Father. As such, we agree with Mother that the court did not find repudiation and, further, that there is no evidence that would support such a finding.

But review of an order denying post-secondary educational support is not limited to whether a child has repudiated his parent. Although repudiation has been discussed in terms of obviating a parent's "obligation" to provide educational support, again, Indiana Code Section 31-16-6-2 provides that a court "may" order the payment of educational support. "[T]here is no absolute legal duty on the part of parents to provide a college education for their children." Scales, 891 N.E.2d at 1119. Thus, the dispositive issue is whether the post-dissolution court abused its discretion when it denied Mother's request for educational support in light of the evidence presented to the court.

Again, in considering Mother's request for educational support, the post-dissolution court was required to consider Blake's aptitude and ability, his reasonable ability to contribute to his educational expenses, and the parents' ability to meet those expenses. See Ind. Code § 31-16-6-2(a)(1). The court was also required to consider "whether and to what extent the parents, if still married, would have contributed to the child's college expenses." Scales, 891 N.E.2d at 1119. Here, the record includes evidence of Blake's grade point average, showing that he has the ability to pursue post-secondary education; his athletic scholarship, student loans and employment, showing his ability to contribute to his educational expenses and his efforts in doing so; and the parents' income levels. Mother has pointed to no evidence to show whether and to what extent she and Father, if married, would have contributed to the child's college expenses.

9

See id. Indeed, the bulk of the evidence at the hearing pertained to repudiation, the nature and extent of Father's attentions to Blake and vice versa, and to Blake's secondary educational expenses. And neither the Decree, the Custody Order, nor the subsequent order modifying support address educational support.

Mother has not shown whether and, if so, to what extent the parties would have contributed to Blake's educational expenses had she and Father remained married. While Father contended that he should not be required to contribute to Blake's education based on Blake's alleged repudiation of their relationship, the court did not make such a finding. Thus, Father did not prevail in that argument. But neither did Mother prevail on her cross-petition, and she appeals from a negative judgment. See Knauff v. Hovermale, 976 N.E.2d 1267, 1269 (Ind. Ct. App. 2012) ("We will reverse [a negative judgment] only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court.") (citation omitted). On the record before us, Mother has not shown that the evidence is without conflict and that all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. See Knauff, 976 N.E.2d at 1269.

Finally, Mother contends that Indiana Code Section 31-16-6-6, as amended in 2012, does not alter the court's "ability" to award educational support. Appellant's Brief at 9. That statute provides, in relevant part, that the "duty to support a child under this chapter, which does not include support for educational needs, ceases when the child becomes nineteen (19) years of age unless" listed circumstances not relevant here occur. Ind. Code § 31-16-6-6(a) (emphasis added). Mother is correct that the termination of

10

child support under Section 31-16-6-6(a) does not alter a court's authority to order the payment of educational support. But neither does that statute require the court to order the payment of educational support. As discussed above, a post-dissolution court has discretion whether to order educational support under Section 31-16-6-2. And Mother has not shown that the post-dissolution court abused that discretion here. Mother's argument under Section 31-16-6-6 is misplaced.

In sum, we commend Blake for his years of hard work, for obtaining an athletic scholarship to cover his tuition, for his work ethic, and for his success in school. But, considering the evidence most favorable to the judgment and with all reasonable inferences drawn in favor of the judgment, Mother has not shown that the trial court abused its discretion when it denied her request for educational support. See Yoon, 711 N.E.2d at 1268. As such, we affirm the trial court's order.

Affirmed.

BAILEY, J., and BARNES, J., concur.

11