# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2017, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erik H. Carter
Carter Legal Services LLC
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Cody P. Cogswell
Cogswell & Associates
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Cynthia Worrell,

*Appellant-Respondent,*

v.

Brian Worrell,

*Appellee-Petitioner*

August 9, 2017

Court of Appeals Case No.
06A01-1606-DR-1456

Appeal from the Boone Superior Court

The Honorable Justin H. Hunter, Special Judge

Trial Court Cause No.
06D01-0710-DR-512

**May, Judge.**

[1]     Cynthia Worrell appeals the trial court's ruling on Brian Worrell's motion to correct error.  Cynthia claims the court erred by modifying custody, by failing to calculate her child support overpayment based on two children being emancipated, and by modifying its award of attorney fees.  Brian cross-appeals,

arguing the trial court erroneously set the date on which the two children were emancipated, and he requests we remand for an award of appellate attorney fees. We affirm as to the modification of custody and the date of emancipation; however, we remand for further proceedings as to Cynthia's over-payment of child support and attorney fees.

# Facts and Procedural History

Cynthia and Brian were divorced on November 29, 2011, and at that time, they had five minor children. The parties were awarded joint legal custody of all five children, with Brian having primary physical custody of the two eldest ("the girls") and Cynthia having primary physical custody of the three youngest ("the boys"). Brian and Cynthia continued to have a fractious relationship even after the divorce.

In May 2013, the parties began filing motions to modify custody and parenting time and motions for contempt based on parenting time issues. The court held four different hearings between August 2014 and October 2014. Then on June 24, 2015, the court entered Findings of Fact and Conclusions of Law that addressed custody, parenting time, child support, and contempt allegations. As relevant to this appeal, the court ordered:

> 38. Cynthia is in Indirect Contempt of Court for failing to ensure that Brian have visitation with the boys as ordered by the Court.

39.     Brian is in Indirect Contempt of Court for failing to ensure that Cynthia have visitation with [the girls] as ordered by the Court.

40.     The Court is not persuaded that a change in custody is in the best interest of the boys.

41.     For Cynthia to purge her Contempt, she must cease to demand that Brian attend activities during Brian's weekend parenting time with the boys.

42.     Brian shall no longer have the obligation to change his own schedule during the weekend to attend the children's activities planned without Brian's consent.

43.     Brian is simply unable to purge his Contempt by restoring Cynthia with meaningful visitation with [the girls].

44.     Rather, Brian may purge his Contempt by paying part of Cynthia's attorney fees . . . in the sum of $10,000 within sixteen (16) months, in monthly payments of $625.00, with first payment due by September 1, 2015.

45.     A party that fails to purge their Contempt may suffer the additional consequence of incarceration following notice and a hearing on the issue.

(Appellant's App. Vol. 3 at 31-2.)

[4]     On July 22, 2015, Brian filed a Motion to Correct Error alleging he had purged the contempt and paid all ordered attorney fees; had presented sufficient evidence to warrant finding Cynthia had interfered substantially with his

visitation, which should have been "significant enough to warrant a modification of custody," (Appellee's App. Vol. 2 at 15);[1] and had presented sufficient evidence to warrant an order for Cynthia to pay attorney fees.

[5] On August 10, 2015, the trial court entered an "Order to appear for correct errors and rule to show cause hearing," setting this matter for hearing on September 15, 2015. (Appellant's App. Vol. 2 at 5) (capitalization removed). The hearing was continued twice and, before it occurred, multiple petitions to show cause were filed.[2] On October 5, 2015, Cynthia filed a "Verified petition to modify child support, uninsured medical expenses, tax exemption, parenting time, extra-curricular activities, communication and request for attorney fees."[3] (*Id.* at 4) (capitalization removed). On October 30, 2015, Brian filed a cross-petition and response to Cynthia's October 5 filing.[4]

[6] After hearing testimony on April 29, 2016, the trial court requested proposed findings of fact and conclusions of law. On May 27, 2016, the court entered an order that modified custody of the boys to Brian; found the girls to be

---

[1] Brian filed an appendix because Cynthia did not include the Motion to Correct Error in her appendix. Neither has Cynthia included any reference to it in her brief. We remind Cynthia's counsel that the Appellant's Appendix is to contain the "parts of the Record on Appeal that are necessary for the Court to decide the issues presented," Indiana Appellate Rule 50(A)(1), and we urge counsel henceforth to consider the pleading from which the appealed order arises to be "necessary" for appellate determination of the issues presented.

[2] These filings are indicated on the Chronological Case Summary ("CCS") but have not been included in the record presented to us.

[3] This motion is not included in the record presented to us.

[4] This motion is not included in the record presented to us.

emancipated as of June 12, 2015, the date of their high school graduation; modified visitation in accordance with the Indiana Parenting Time Guidelines; modified child support to zero dollars paid by Cynthia; gave the tax exemptions for all three boys to Brian; declared null various prior orders regarding communication and medical decision-making; and found Cynthia was in contempt of the court's order and was required to pay Brian's attorney fees resulting in a "zero sum net" owed between the parties to their respective attorneys. (Appellant's App. Vol. 2 at 39.)

# Discussion and Decision

[7] "A trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion." *Kashman v. Haas,* 766 N.E.2d 417, 419 (Ind. Ct. App. 2002). "An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom." *Id.*

[8] The trial court entered specific findings of fact and conclusions of law in its order. In such a case, we cannot set aside the findings or judgment unless clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Morfin v. Estate of Martinez,* 831 N.E.2d 791, 801 (Ind. Ct. App. 2005). First, we decide whether the evidence supports the findings. *Id.* Second, we determine whether the findings support the judgment, construing the findings liberally in support of the judgment. *Id.* A judgment is clearly erroneous if it is unsupported by the findings of fact and

conclusions thereon. *Id.* We do not reweigh the evidence or judge the credibility of the witnesses, and we consider only the evidence supporting the judgment and the reasonable inferences drawn therefrom. *Id.*

[9] Appellate courts give considerable deference to the findings of the trial court in family law matters. *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940-41 (Ind. 2005). We recognize the trial judge "is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children - the kind of qualities that appellate courts would be in a difficult position to assess." *Id.* Decisions that change the results below are especially disruptive in the family law setting. *Id.*

## Custody Modification

[10] Cynthia appeals the trial court's modification of custody of the boys to Brian. A court is not allowed to modify a child custody order unless the "modification is in the best interests of the child" and "there is a substantial change in one (1) or more of the factors that the court may consider under section 8[.]" Ind. Code § 31-17-2-21. The factors include:

> (1) The age and sex of the child.[5]
> (2) The wishes of the child's parent or parents.

---

[5] Cynthia asserts the trial court committed error by failing to "admonish or sanction" Brian for testifying and arguing facts related to gender as a consideration of custody. (Appellant's Br. at 31.) As Brian argues, however, gender is one of the statutory factors the court may consider when determining whether custody modification is appropriate. *See* Ind. Code § 31-17-2-8 (1) ("The age and sex of the child."). Moreover, the court's findings do not suggest the court relied on the evidence about which Cynthia complains. Accordingly, even if there had been error in the court's failure to *sua sponte* admonish Brian for his testimony,

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;
> (B) the child's sibling; and
> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

> (A) home;
> (B) school; and
> (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8 (footnote added).

[11] We first address Cynthia's assertion Brian had to prove a substantial change of circumstances justifying modification occurred between June 24, 2015, when the court entered Findings of Fact and Conclusions of Law that maintained custody in Cynthia, and May 27, 2016, when the court entered the appealed

---

it would be harmless. *See, e.g.,* *In re Adoption of Dove*, 174 Ind. App. 464, 472, 368 N.E.2d 6, 11 (1977) (no reversible error when evidence did not demonstrate trial court used challenged statements in its decision).

order that modified custody to Brian. The Chronological Case Summary indicates the hearing from which the presently appealed order was issued was scheduled to address issues raised in multiple motions, including Brian's July 22, 2015, Motion to Correct Error. (Appellant's App. Vol. 2 at 4.) As the court was ruling on Brian's request that the court reconsider its decision not to give him custody of the boys in the 2015 order, we find no error in the court's consideration of facts presented at the hearings in 2014 when determining whether to modify custody pursuant to Brian's motion to correct error. *See* Ind. Trial Rule 52(B) (Pursuant to the motion to correct error, the court "may open the judgment, if one has been entered, take additional testimony, amend or make new findings of fact and enter a new judgment or any combination thereof . . . .").

[12] Moreover, at the April 13, 2016, hearing regarding all pending motions, just before the first witness was sworn, the following interaction occurred:

> [Brian's Counsel]: And your Honor I'd apologize. I'd ask the Court to take judicial notice of its Order of June Twenty Fifth as well as the testimony that lead up to that decision so that we do not need to go . . . back and rehash those issues.

> [The Court]: And uh I I would like to do so. But the law says I need to first see response. I'd like to take judicial notice of my prior Order which I think I can anyway. But uh and the testimony. I know you weren't here for that. But it's my intention to.

> [Cynthia's Counsel]: Yeah. No objection.

> [The Court]: And so I will take judicial notice of the Court's Orders all the Court's Orders in this case.
>
> [Brian's Counsel]: Sure.
>
> [The Court]: And the testimony that I've heard thus far from prior hearings.

(Tr. Vol. 1 at 19) (errors in original). As Cynthia agreed at the hearing that the trial court could take notice of the evidence from prior hearings, she cannot now be heard to complain that the court considered the prior testimony. *See Dennerline v. Atterholt*, 886 N.E.2d 582, 595 (Ind. Ct. App. 2008) (when party consents at trial to the exclusion of evidence, the party cannot be heard to complain on appeal about that exclusion), *reh'g denied*.

[13] Turning to the merits of the court's decision, we note the trial court concluded a substantial change had occurred and "the best interests of the children are best served with Brian having primary physical custody" of the boys. (Appellant's App. Vol. 2 at 37.) In support thereof, the trial court found, in pertinent part:

> 4. The boys do not have friends that come to visit at [Cynthia]'s home whereas the boys have several friends at [Brian]'s home.
>
> 5. The boys do not keep good hygiene at [Cynthia]'s home whereas they do keep good hygiene at [Brian]'s home.
>
> 6. [M.W.], age 8 during the hearing and now age 9, still does not use the bathroom as he should. [Cynthia] does not appear to be taking corrective action where [Brian] has been using corrective action.

7. [Cynthia], and the boys, have been living with [Cynthia]'s parents in [Cynthia]'s parents' home. [Brian] has a large home allowing the children to all have their own rooms. [Cynthia] does not have a home capable of comfortably housing all of the children or even just her and the three boys.

8. [Cynthia] has a history of denying visitation to [Brian] without good cause.

9. [Brian] is actively involved with the schooling of the boys and does wood working projects with the boys. [Cynthia] is also active with the boys through Boy Scouts of America; however, she has used the boys' involvement in Boy Scouts as a method to deny visitation to [Brian].

10. [Cynthia] does not willingly provide school records and medical records to [Brian] on the boys.

11. Often times, [Cynthia] provided little or no notice to her attorney, or to [Brian], of the children's activities that were not already on the calendar and tried to make [Brian] go through great efforts to get his children. [Cynthia]'s behavior has become a repeated pattern that is detrimental to the children in that it further alienates the children from [Brian].

12. [Cynthia] testified that she did not inform [Brian] of many of the activities the boys now participate. [sic] Further testimony showed that the Cub Scout leaders did not communicate with [Brian] about events. [Brian] could not have known of all of the events as [Cynthia] did not relay the dates and times adequately nor did the scouting leaders.

\* \* \* \* \*

14. [Cynthia] consistently, though reminded in several Court orders dating back to August 28, 2012, refused to permit telephone communication between [Brian] and his children.

15. Accordingly due to the foregoing, the record is replete with testimony and evidence that [Cynthia] willfully, wantonly, and regularly denied [Brian] visitation time with the sons without notice or good cause.

16. The Court finds that if a parent is vindictive in their parenting, that parent would no longer be acting in the child's best interest.

17. [C.W.] testified that he and his brothers wanted to live with [Brian]. That he and his brothers preferred the types of activities available to the boys at [Brian]'s home. They also have very favorable relationships with the extended family at [Brian]'s home. [Brian] lives in Pike school district which has significantly more opportunities available to the children than their current school district. In the current home environment, the boys only spend about an hour of waking time with [Cynthia] due to her work schedule through the week and the boys still share a bedroom with [Cynthia]. [Cynthia] is verbally aggressive toward the children and there is a definite difference in the demeanor and parenting styles between [Cynthia] and [Brian]. [Cynthia] yells at the boys and shows she is not an effective disciplinarian. [Cynthia] utilizes verbal discipline often with the boys whereas [Brian] does not need to utilize the same level of discipline as the children are better behaved at [Brian]'s home. [Cynthia] testified the boys are better behaved at [Brian]'s home than at [Cynthia]'s home.

18. [Cynthia] created a "take-it or leave-it" visitation calendar. The calendar was not based on the Court's order as [Cynthia] explained the "custodial parent decides when non-custodial gets the kids." This is contrary to the Court's orders and the best interest of the children in promoting and fostering a relationship with the non-custodial parent.

\* \* \* \* \*

22. The Court has considered the testimony of the parties and their minor child, [C.W.]. [C.W.] has a desire to reside with [Brian]. Based on the testimony and evidence presented, the best interests of the children are best served with [Brian] having primary physical custody of the parties' minor children as detailed above.

(*Id.* at 33-37.)

[14]     Cynthia argues "Findings Numbers 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 17, 18, and 22 are not supported by any evidence in the record." (Appellant's Br. at 28.) Our review of the record uncovered evidence supporting nearly all those findings.[6] Brian's testimony supports Finding 6, (Tr. Vol. 1 at 64-5); Finding 8, (*id*. at 21-38); Finding 9, (*id*. at 25, 57-8); half of Finding 10, (*id*. at 99 (regarding medical records)); Finding 11, (*id*. at 21-33); Finding 12, (*id.* at 84-6); Finding 14, (*id*. at 24, 91); Finding 15, (*id*. at 21-33); and Finding 18, (*id.* at 82-4, 226). Cynthia's testimony supports parts of Finding 18. (*See id.* at 203-9.) Finding 7, regarding the living situations at Cynthia's house and Brian's house, is supported by testimony from Brian, (*id*. at 62), and from C.W., who said at

---

[6] The transcript provided on appeal, from only the hearing on April 13, 2016, does not include testimony to support a few specifics in these findings – such as those about Cub Scouts, neighborhood friends, and Cynthia's failure to not provide the boys' school records to Brian. We note, however, that the transcript includes references to such testimony being given at the hearings in 2014. As we noted earlier, the parties agreed the court could take judicial notice of the prior hearings as it ruled on Brian's motion to correct error and the other pending motions. *See supra* at 9, ¶12. Therefore, to challenge the validity of the trial court's findings, the parties needed to provide all the necessary transcripts. *See* Ind. Appellate Rule 9(F)(5) ("If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request the Transcript of the entire trial or evidentiary hearing . . . ."). Nevertheless, as the transcript from April 2016 supports nearly all the court's findings, we address the merits of Cynthia's argument to the extent possible. *Cf. Titone v. State*, 882 N.E.2d 219, 222-23 (Ind. Ct. App. 2008) (waiving defendant's challenge to sufficiency of evidence when defendant requested transcripts of only some trial witnesses).

Cynthia's house "I sleep in the same room with my other two brothers and my mom," (*id.* at 133), but at Brian's house "I sleep in my own room." (*Id.* at 134.) C.W.'s testimony also supports the vast majority of Finding 17, including the portion repeated in Finding 22 about C.W. wishing to live with Brian. (*Id.* at 136 ("I do enjoy at my dad's . . . that's really where I would like to go.").) Portions of Finding 17 are also supported by testimony, and the reasonable inferences therefrom, provided by Cynthia and Brian.

[15] Those cumulative findings demonstrate a substantial change in circumstance making it in the boys' best interest to now reside with Brian. C.W. reported he and his brothers want to live with their Father, and the court repeatedly found Cynthia had interfered with Brian's ability to talk to or spend time with the boys. While isolated acts of misconduct might not warrant a modification of custody, a pattern of behavior over time does. *See In re Paternity of J.T.*, 988 N.E.2d 398, 401 (Ind. Ct. App. 2013) (mother routinely denying father visitation was substantial change justifying custody change). Thus, we find no error in the court's modification of custody.

## Emancipation of the girls

[16] Regarding the parties' two daughters, the trial court found:

> 3. [The girls], the parties' daughters turned 19 on October 16, 2015. [Cynthia] filed her Petition for Modification on October 5, 2015. Even though [Brian] was still financially supporting [the girls], the children moved out of [Brian]'s home. The Court finds that the girls shall be determined emancipated as of the date just

after their graduation from high school, June 12, 2015. This sets June 19, 2015 as the date by which child support is modified.

(Appellant's App. Vol. 2 at 33.)

[17] Cynthia argues the trial court erred by failing to order Brian to reimburse her for the child support she paid after June 19, 2015, the date from which the court said support would be modified due to emancipation. Brian argues the trial court erred by finding the daughters were emancipated as of June 12, 2015, and erred by modifying support to a date earlier than Cynthia's petition, which was filed in October 2015. As our resolution of Brian's arguments will impact the factual basis underlying Cynthia's argument, we address Brian's arguments first.

[18] When we review a trial court's determination of the date of emancipation, we neither reweigh evidence nor assess credibility of the witnesses. *Connell v. Welty*, 725 N.E.2d 502, 504 (Ind. Ct. App. 2000). We cannot set aside the court's finding unless it is clearly erroneous. *Id*.

[19] On appeal, Brian asserts the girls could not have been emancipated on June 15, 2015, because he was still supporting them financially. However, at the hearing, Brian's counsel asked Brian when he was testifying: "And we're asking that emancipation date then be the date of graduation?" (Tr. Vol. 1 at 228.) Brian responded: "Correct." (*Id*.) As Brian also testified the girls graduated from high school in June 2015, Brian cannot now assert error in the court's selection of an emancipation date in the middle of June. *See Weinberger v. Boyer*,

956 N.E.2d 1095, 1113 n.6 (Ind. Ct. App. 2011) (doctor cannot appeal $5,000 cost court assigned to revision surgery when, at trial, doctor conceded the surgery was $5,000), *trans. denied*.

[20] Turning now to Cynthia's assertion, she claims the court should have ordered Brian to reimburse her for all the support she paid for the girls after the date of emancipation. Unlike other modifications of child support, "a termination of support based upon emancipation dates back to the actual date of emancipation, not the date the petition to terminate support was filed." *Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013). The court's order stated: "This sets June 19, 2015 as the date by which child support is modified." (Appellant's App. Vol. 2 at 33.) However, the court did not thereafter indicate an amount that Brian owes Cynthia for the support she paid after that date. Thus, we remand for the court to determine how many weeks Cynthia paid support after June 19, 2015, and to order Brian to reimburse Cynthia for those payments.

## Attorney Fees

[21] The trial court, after making multiple findings regarding Cynthia's behavior, ordered:

> 35. Due to [Cynthia]'s wanton and willful contempt of the Court's order, she shall pay to [Brian] attorney's fees. [Brian] was previously ordered to pay attorney fees for contempt. [Brian] previously paid attorney fees under the Court's last order. As of the date of this order, the parties shall no longer be

> indebted to one another resulting in a zero sum net to [Cynthia] or [Brian].

(*Id*. at 39.)

[22] Cynthia asserts that order is reversible error because Brian did not request attorney fees and the trial court was not presented evidence of the amount of Brian's attorney fees.[7] Brian argues the matter of attorney fees was included in his motion to correct error, so the court was reviewing its previous sanctions and "[w]hile it may not be clear exactly how the Court arrived at the 'net zero sum', [sic] it is clear that the Court provided a well thought out set of findings and conclusions thereon to come to this conclusion." (Appellee's Br. at 14.)

[23] Civil contempt is "the willful disobedience of any lawfully entered court order of which the offender has notice," *Winslow v. Fifer*, 969 N.E.2d 1087, 1093 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, and the objective of civil contempt proceedings is to "coerce action for the benefit of the aggrieved party." *Id*. Findings of contempt are "within the sound discretion of the trial court." We

---

[7] Cynthia also asserts: "Mother was not found in contempt in this Order." (Appellant's Br. at 29.) She is, however, incorrect. Paragraph 35 of the court's order clearly states she was in "wanton and willful contempt of the Court's order." (Appellee's App. Vol. 2 at 35.) And that conclusion is supported by a number of the trial court's findings: "Mother has a history of denying visitation to Father without good cause," (Appellee's App. at 20); Mother "has used the boys' involvement in Boy Scouts as a method to deny visitation to Father," (*id*.); "Mother's behavior has become a repeated pattern that is detrimental to the children in that it further alienates the children from the Father," (*id*.); "Mother consistently, though reminded in several court orders dating back to August 28, 2012, refused to permit telephone communication between Father and his children," (*id*. at 21); and Mother's approach to the visitation calendar was "contrary to the Court's orders and the best interest of the children in promoting and fostering a relationship with the non-custodial parent." (*Id*.)

may reverse only if the court abused its discretion by entering a decision that was "against the logic and effect of the facts and circumstances before the court" or contrary to law. *Id*. Trial courts have "inherent authority to award attorney fees" as a sanction following a finding of civil contempt. *Id*.

[24] Brian is correct that his motion to correct error asserted the court erred by requiring him to pay $10,000 in attorney fees. However, Cynthia is correct that the court's order does not explain how it arrived at a "zero sum" balance. Nor did the court provide any findings that support that "zero sum." (*Id.*) Therefore, we remand to the trial court to clarify its order regarding attorney fees.[8]

# Conclusion

[25] The trial court did not abuse its discretion by modifying custody of the boys to Brian. Brian waived any argument that the girls were not emancipated in June 2015, as he asked the court to set the emancipation as "graduation," which was June 12, 2015. However, the court erred by modifying support for the girls as

---

[8] In the Conclusion of his Appellee's Brief, Brian requests we remand for the trial court to determine if he is entitled to an award of appellate attorney fees. Our rules provide we "may assess damages if an appeal . . . is frivolous or in bad faith." Ind. Appellate Rule 66(E). Such an award may include attorneys' fees, *id.*, and whether to enter such an award is left to our discretion. *Id*. However, we "use extreme restraint when exercising" that power due to "the potential chilling effect upon the exercise of the right to appeal." *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002), *reh'g denied, trans. denied*. As we remand for the court to enter an order for Brian to return child support paid by Cynthia after the girls' emancipation, we cannot find Cynthia's appeal "frivolous or in bad faith." *See* App. R. 66(E). Accordingly, in accordance with the American Rule, each party shall be left to pay his or her own appellate attorney fees. *See, e.g., Gillock v. City of New Castle*, 999 N.E.2d 1043, 1047 (Ind. Ct. App. 2013) (appellate court declined to award appellate attorney fees where appeal was not "utterly devoid of all plausibility or in bad faith").

of June 19, 2015, without ordering Brian to return to Cynthia the money she paid thereafter in child support for the girls. Brian has not demonstrated he is entitled to appellate attorney fees, but we remand for the trial court to clarify its calculation of attorney fees based on the contempt sanctions.

[26] Affirmed in part and remanded with instructions.

Najam, J., and Bailey, J., concur.