# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JAIMIE L. CAIRNS**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana



**FILED**

Dec 31 2012, 11:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

LISA SVENSTRUP, )
)
    Appellant, )
)
        vs. )    No. 29A02-1206-DR-452
)
THOMAS SVENSTRUP, )
)
    Appellee. )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne A. Sturtevant, Judge
Cause No. 29D05-0901-DR-7

**December 31, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Lisa Svenstrup ("Mother") appeals the trial court's order denying her petition for allocation of college expenses. Mother raises one issue which we revise and restate as whether the trial court erred in denying Mother's petition for allocation of college expenses. We affirm.

The relevant facts follow. Mother and Thomas Svenstrup ("Father") were married on August 13, 1983. Mother and Father had L.S., born on May 7, 1984, K.S. and C.S. born on March 4, 1987, and T.S., born on December 22, 1992.

On February 17, 2005, Father filed a petition for dissolution of marriage. On May 12, 2006, the court approved the parties' final settlement agreement and entered a decree of dissolution. The settlement agreement provided that Father would pay child support in the amount of $284.93 per week or $1,234.70 per month, and that the parties would equally divide the extracurricular expenses for T.S., "such as camps, school or sports related endeavors, so long as they discuss in good faith and agree on the activity prior to enrolling [T.S.]." Appellant's Appendix at 43. Father agreed that he would "maintain a life insurance policy with death benefits of at least $300,000 for the purpose of providing security for his college and support obligations in the event of his death prior to the termination of the support and education obligations under this Agreement." Id. The agreement indicated that Father could reduce the death benefit to $150,000 when K.S. and C.S. graduated from college or turned twenty-one years old. The agreement also discussed Father's obligations for college expenses with respect to L.S., K.S., and C.S.[1]

---

[1] Specifically, the agreement provided:

   4.10   College Expenses for [L.S.]. [L.S.] is currently attending Northern Michigan

On June 23, 2011, Father filed a petition to modify child support.[2] On October 12, 2011, the court entered an order which stated that Father's gross weekly earnings from Ameriprise were $1,318 and that his gross weekly income from all sources was $1,748.[3] The court found that Mother was injured in an automobile accident in November 2010 and had not been steadily employed since that time, but was recovering and anticipated being released soon by her doctors. The court attributed to Mother the potential income

University. [Father] agrees to pay all of [L.S.'s] college expenses, including room and board, tuition, books, and mandatory fees for spring semester, beginning January 2006. [L.S.] has approximately $5,000.00 in her Merrill Lynch account. [Father] and [Mother] agree that this account will be applied to her college expenses, with [Father] paying amounts that exceed that which is left in the Merrill Lynch account, through and including the fall semester 2006, at which time it is anticipated that [L.S.] will graduate.

4.11    College Expenses for [K.S] and [C.S.].    [K.S.] and [C.S.] are currently freshmen attending Indiana University at the Bloomington Campus. [Father] shall be responsible for the college expenses of [K.S.] and [C.S] for fall semester 2005-2006, including tuition, room and board (which may include required sorority fees if [K.S.] and/or [C.S.] is a member of a sorority), required fees (including such things as student activity, student health, technology, bus transportation, and parking fees), books, and required school supplies. [K.S.] and [C.S.] each have a Merrill Lynch account with approximately $5,500 in said account. [Father] and [Mother] agree that 50% of the Merrill Lynch accounts for [K.S.] and [C.S.] shall be applied to their college expenses for second semester, beginning January 2006 and the other 50% applied towards their college expenses for fall semester beginning August 2006. After payment of these amounts towards their college expenses, the balance of the college expenses, as defined above, for the semester beginning January 2006 and the semester beginning August 2006, shall be paid by [Father]. Effective with the spring semester (January 2007) of the 2006-2007 school year, [Father] shall pay 95% and [Mother] shall pay 5% of the college expenses of [K.S.] and [C.S.], as defined above, at Indiana University (or any other accredited institution to which either may later transfer, provided that the financial obligations of [Father] and [Mother] shall not be greater than if [K.S.] and [C.S.] remained at Indiana University as an Indiana resident. [Father] and [Mother] further agree that their financial obligations with regard to the college expenses of [K.S.] and [C.S.] shall be limited to four years, beginning with their initial enrollment at Indiana University in August 2005. Effective the spring semester, January 2008, [Father] shall pay 90% and [Mother] 10% of all college for [K.S.] and [C.S.] as defined above.

Appellant's Appendix at 44-45.

[2] The record does not contain a copy of Father's petition.

[3] The court's October 12, 2011 order indicated that the court's last order setting child support was entered on February 7, 2011. The record does not contain a copy of the court's February 7, 2011 order.

3

of minimum wage employment for a forty-hour work week in the amount of $290. The court found that the evidence established a "substantial and continuing change in circumstance in that as of August 29, 2011, [T.S.], the minor child of the parties, was enrolled in and attending Indiana University at Bloomington and has been living on campus since that date." Id. at 68. The court concluded that it was not necessary to consider specific college expenses in order to rule on Father's petition to modify child support, granted Father's petition, and modified his weekly support obligation to $96.77.

On October 19, 2011, Mother filed a verified petition for allocation of college expenses and request for hearing and request for attorney fees.[4] On December 21, 2011, and March 14, 2012, the court held hearings on Mother's petition. At the time of the hearings, T.S. was attending college at Indiana University as a freshman. Evidence at the hearing revealed that the financial aid, including scholarships and loans, received by T.S. for the 2011 fall semester exceeded T.S.'s costs. Mother introduced an exhibit listing additional costs including SAT fees, ACT fees, application fees, moving expenses, books and cell phone costs, and fees related to being a member of a fraternity house. The exhibit indicated that Mother and T.S. paid these expenses. Father testified that he paid a $100 enrollment deposit for T.S., $100 for tires for T.S., and minor expenses including some of T.S.'s testing and meals. Father further testified that he went to Bloomington to visit T.S. and paid to bring T.S. back to Bloomington at the end of vacation. Father also testified that he told T.S. that he needed to very carefully weigh the financial responsibility of joining a fraternity and that T.S. would need to pay any expenses related

---

[4] The record does not contain a copy of Mother's petition.

to the fraternity. Mother testified that it was her position that she and Father be responsible for any student loans.

On March 26, 2012, the court denied Mother's petition in an order that stated in part:

> The Court first notes that while there is statutory authority for a court to order either or both parents to pay sums toward their child's college education, "there is no absolute duty on the part of parents to provide a college education for their children." *Bales*[ *v. Bales*], 801 N.E.2d 196 (Ind. App. 2004)[, <u>trans</u>. <u>denied</u>]. It should also be noted that nothing in Indiana law requires that all children of divorced parents be treated equally in regards to the payment of the college expenses. Nor does the precedent set in a decree of dissolution with older children bind what is required of the parents for a younger sibling, particularly when no provision was set out for the younger child.

> The marriage of the parties in this case was dissolved in 2006. Provisions in their decree for the education of their older children were made based upon the parties' finances at that time. In a perfect world, the financial condition of both parties would have improved in the subsequent years or at least stayed the same so that the benefits they gave to their older children in terms of educational support could be given to their youngest child. Unfortunately, that is simply not the situation that the parties now find themselves to be in. Mother acknowledges that her financial condition has taken a heavy turn for the worst, both with circumstances within and beyond her control. Mother, however, refuses to accept that Father's financial condition could have been affected in the same way in the years subsequent to their divorce. Mother has contended and believes that Father must have hidden stores of cash, assets, or resources that he refuses to disclose but has presented no evidence to support this contention. Further, the Court has put extreme pressure on Father over the last several years to meet his financial obligations under the original decree and no money has magically appeared despite the threat of, and actual incarceration for, failure to meet his obligations.

> Indiana Code § 31-16-6-2 sets forth those factors that the Court must take into account in setting an order for education support. Those include the child's aptitude and ability, and the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other financial aid. Finally, the Court must consider the ability of each parent to meet expenses.

There is no question that the parties' youngest child, [T.S.], has the aptitude and ability to succeed in college. It is also true that he has some resources in the form of accounts set aside for him by his mother and grandmother, although Mother would prefer that these be used for other future expenses. [T.S.] also has shown the ability to obtain and maintain financial aid in the form of grants and scholarships and has been able to obtain loans to meet shortfalls. [T.S.] also works during the summer, and as he adapts to the academic demands, may be able to work during the school year.

The parties agreed that the Court would take judicial notice of the evidence of the parties' finances that led to the Court's order modifying child support entered on October 12, 2011. That evidence establishes that neither parent is in a position to take on any additional court-mandated financial burdens at this time, and the Court does not see that changing anytime soon.

For the above reasons, the Court declines to enter an order for college expenses and denies [Mother's] Verified Petition for Allocation of College Expenses and the Request for Attorney's Fees. While the Court has the highest regard and gratitude for Ms. Clar's representation of the Respondent, the request for attorney's fees is denied on the basis that Mother has been totally unrealistic in her beliefs and her demands for contribution from Father leading up to this action. While the Court realizes that its ruling may result in [T.S.] incurring debt to obtain his undergraduate degree, this is, unfortunately, not unusual for many, if not most, current college students. The Court also recognizes that Mother will continue to do whatever she can to assist [T.S.]. Since Father continues to have a good relationship with [T.S.], there is also no reason to believe that Father will not do everything that his finances permit to assist [T.S.].

Id. at 24-26. Mother filed a motion to reconsider and / or motion to correct error, and the court denied Mother's motion on May 2, 2012.

Before addressing Mother's arguments, we note that Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. Zoller v.

6

Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006).  This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee.  Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002).  Questions of law are still reviewed *de novo*, however.  McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

The issue is whether the trial court erred in denying Mother's petition for allocation of college expenses.  Mother argues that a consideration of the factors in Ind. Code § 31-16-6-2 reveals that the trial court abused its discretion.  Mother asserts that the court's order was essentially a modification and that the change in circumstances did not justify the court's denial of a post-secondary education order.  Mother states that "[w]hile the Decree did not specifically include a provision outlying [sic] the percentages the parties were to pay for T.S.'s education, the Decree implicitly included T.S., and Father's request to change his percentage of T.S.'s educational expenses is a modification and not a new post-secondary education case."  Appellant's Brief at 9.  Mother argues that "while there was evidence that the relative financial position of the parties had changed slightly, that evidence supports the trial court modifying the post-secondary education order, . . . not eliminating the post-secondary education order altogether."  Id. at 10.  Mother requests that we reverse and remand with instructions to enter a post-secondary education order requiring each party to contribute a proportional share based on their relative income levels.

Mother also maintains that even if the trial court's order was not a modification, the evidence did not support the trial court's findings.  Specifically, Mother argues that

7

the record does not support the court's findings that T.S. has shown an ability to obtain and maintain financial aid, that T.S. may be able to work during the school year, that neither parent is in a position to take on any additional court mandated financial burdens, and that T.S. and Father have a good relationship.

We review a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion. Hirsch v. Oliver, 970 N.E.2d 651, 662 (Ind. 2012). We affirm the trial court unless the decision is against the logic and effect of the facts and circumstances before the trial court. Id. "We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind. 1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind. 1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

This court has stated:

> Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the

statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

Hinesley-Petry v. Petry, 894 N.E.2d 277, 280-281 (Ind. Ct. App. 2008) (quoting McKay v. McKay, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994)), reh'g denied, trans. denied.

Ind. Code § 31-16-6-2 "gives guidance regarding contribution toward post-secondary educational expenses, listing certain factors to take into account, such as 'the child's aptitude and ability,' 'the child's reasonable ability to contribute to educational expenses,' and 'the ability of each parent to meet these expenses,' among other things."[5]

---

[5] Ind. Code § 31-16-6-2 provides:

(a)     The child support order or an educational support order may also include, where appropriate:

    (1)     amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

        (A)     the child's aptitude and ability;

        (B)     the child's reasonable ability to contribute to educational expenses through:

            (i)     work;

            (ii)     obtaining loans; and

            (iii)     obtaining other sources of financial aid reasonably available to the child and each parent; and

        (C)     the ability of each parent to meet these expenses;

    (2)     special medical, hospital, or dental expenses necessary to serve the best interests of the child; and

9

Hirsch, 970 N.E.2d at 660. "Child Support Guideline 8(b) lists expenses that may be included within a post-secondary educational expense order, such as tuition, books, lab fees, supplies, student activity fees, room and board under certain circumstances, transportation, car insurance, clothing, entertainment, and incidental expenses." Id. at 661. "This guideline also explicitly states that '[i]t is discretionary with the court to award post-secondary educational expenses and in what amount.'" Id. (quoting Child Supp. G. 8(b)). It continues that the court should "weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Child Supp. G. 8(b).

Even assuming that the trial court's order constituted a modification as argued by Mother, we cannot say that the court erred. The modification of a child support order is governed by Ind. Code § 31-16-8-1, which provides:

(a)     Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.

(b)     Except as provided in section 2 of this chapter, modification may be made only:

(1)     upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

---

(3)     fees mandated under Title IV-D of the federal Social Security Act (42 U.S.C. 651 through 669).

(b)     If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that:

(1)     is duplicated by the educational support order; and

(2)     would otherwise be paid to the custodial parent.

10

        (2)     upon a showing that:

              (A)    a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

              (B)    the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

    (c)    Modification under this section is subject to IC 31-25-4-17(a)(6).

Generally, provisions for the payment of educational expenses are also modifiable because educational expenses are in the nature of child support. See Martin v. Martin, 495 N.E.2d 523, 525 (Ind. 1986) ("Because Ind. Code § 31-1-11.5-17 [now Ind. Code § 31-16-8-1] expressly permits modification of 'an order with respect to child support,' we hold that educational support orders not only continue following emancipation and age 21, but also are subject to further modification.").

    With respect to T.S.'s aptitude and ability, Mother testified that T.S. wants to be a doctor and is intelligent. Mother also testified that a part of the funding for T.S.'s education included scholarships that required that he maintain a B average and that he "should be able to keep that." Transcript at 23. The cost of T.S.'s fall semester of 2011 was $8,207.73, and T.S. received aid of $10,018, which resulted in a total credit of $1,910.27. Part of the aid for the fall semester of 2011 constituted $2,737 in federal loans, and the remainder of the $10,018 in aid constituted scholarships and grants that do not need to be reimbursed. An account statement dated September 15, 2011, indicated a

11

refund of $1,914.39. An account statement dated January 19, 2012, indicated financial aid in the amount of $10,193. Mother expected that T.S. would work during the summer of 2012 and have money available to pay college expenses. T.S. also participates in a work study program and receives a financial benefit.

With respect to the parties' ability to meet T.S.'s college expenses, we observe that Mother admitted at the hearing that she and Father suffered significant financial setbacks since May 2006. According to Father's testimony, he does not have a retirement account other than an annuity that will be paid to him at age sixty-five. Father has a checking account with approximately $1,200 and does not have a savings account. Father owns his own home and has $117,000 left to pay on the mortgage, which is about the value of the house. Father filed bankruptcy at some point. Father incurs a tax liability of approximately $10,800 a year and receives no actual cash compensation from Ameriprise until his earnings cover that tax payment.

To the extent that Mother argues that the trial court's finding that T.S. and Father have a good relationship is erroneous, we observe that Father paid a $100 enrollment deposit for T.S. and paid for some of T.S.'s minor expenses including T.S.'s testing and meals. Father went to Bloomington to visit T.S. and paid to bring T.S. back to Bloomington at the end of the vacation. Father also attended T.S.'s initiation into the fraternity.

Based upon the record, Ind. Code § 31-16-6-2, and Support Guideline 8, we cannot say that the trial court abused its discretion in denying Mother's petition for allocation of college expenses. However, we also observe that the trial court's October

12, 2011 order recognized a substantial and continuing change in circumstance in that T.S. was enrolled in and attending Indiana University and the court's March 26, 2012 order found that T.S. has the aptitude and ability to succeed in college. Further, the record reveals that Father hopes to receive $100,000 from a lawsuit, and while the record does reveal that Father has a tax liability, the record does not reveal the extent of such a liability.

We also note that Mother makes an alternative request that in the event we affirm the trial court's decision as to post-secondary education expenses that she be allowed to request a modification of the order based upon a change of circumstances, even if the change occurs after the child is emancipated. Mother states in her brief that:

> While modifications of post-secondary education orders are permitted, there is no case law allowing Mother to modify a denial of post-secondary education expenses and allowing her to modify a denial after the child would be emancipated by law. This leaves Mother with no recourse if a change in circumstances occurs, and there are several possible changes in circumstance possible in in this case: (1) T.S.'s financial aid package could change, and according to Mother's motion to correct error, T.S.'s financial aid package was going to change leaving T.S. with a gap of $15,024; (2) tuition, room and board, and/or fees could increase in cost; and ([3]) Father could receive a law suit settlement of upwards of $100,000.

Appellant's Brief at 19-20 (internal citation omitted).

In this regard we note that Ind. Code § 31-16-6-6(a) was amended effective July 1, 2012 to provide that:

> The duty to support a child under this chapter, *which does not include support for educational needs*, ceases when the child becomes nineteen (19) years of age unless any of the following conditions occurs:
>
> (1)     The child is emancipated before becoming nineteen (19) years of age. In this case the child support, *except for the educational needs outlined in section 2(a)(1) of this chapter*,

13

terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(Emphases added).

Under these circumstances, where Mother petitioned for an educational support order PRIOR to T.S.'s emancipation at age nineteen but which petition was denied by the trial court's order, we hold that the order is subject to modification. Cf. Claypool v. Claypool, 712 N.E.2d 1104, 1110 n.9 (Ind. Ct. App. 1999) (holding that requiring the children to acquire student loans without placing any limit on either the amount of loans or on the children's total contribution, considering all forms of aid, is clearly erroneous, and noting that while the children received substantial college scholarships and grants, which had paid tuition, room, board, and some of the other incidental expenses, "should these types of non-reimbursable aid be reduced or discontinued, the children could be required to incur significant debt"), reh'g denied, trans. denied.

For the foregoing reasons, we affirm the trial court's order denying Mother's petition for allocation of college expenses, which order may be modified upon the requisite showing of changed circumstances so substantial and continuing as to make the terms of the existing order unreasonable.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.

14