**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CASEY D. CLOYD**
Indianapolis, Indiana



FILED

Feb 25 2014, 10:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANGELO A. LIALI, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1307-DR-640 |
| | ) | |
| PATSY LIALI, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34C01-0103-DR-199

**February 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Angelo A. Liali ("Father") appeals a trial court order denying his motion to modify his agreed college support obligation for his daughter, V.L., and holding him in indirect contempt for refusing to pay his $1560 support obligation for her most recent semester in accordance with an agreed order. We affirm.

**Facts and Procedural History**

In 1999, Patsy Liali ("Mother") and Father filed cross-petitions for dissolution of their marriage. In November 2000, the trial court issued a dissolution decree and awarded Mother custody of the couple's two minor children. The trial court ordered Father to pay $131 in weekly child support as well as a $75,619.24 property settlement judgment. The couple's older child was emancipated in 2007.

In July 2010, Father filed a petition to modify support and to determine college expenses for their younger child, V.L. On November 17, 2010, the trial court issued an agreed order pursuant to which Father was required to pay $1160 toward V.L.'s fall 2010 semester expenses and $1560 toward her expenses for spring 2011 and each semester thereafter. Payments were to be made to Mother through the child support office within thirty days of the beginning of each semester. The agreed order required that V.L. maintain a "C" grade-point average, remain a fulltime student, and periodically report her grades to her parents. Appellant's App. at 24.

In November 2012, Father filed a petition to emancipate and terminate college expenses. The trial court held a hearing on January 7, 2013, and denied Father's petition.

Father failed to pay $1560 toward V.L.'s spring 2013 expenses within thirty days as required. On February 22, 2013, Mother filed a verified motion for contempt based on Father's nonpayment. On April 4, 2013, Father filed a petition to modify college contribution, alleging changes in his financial circumstances and V.L.'s failure to meet her academic obligations. In May 2013, the trial court held a hearing on both parties' motions. The trial court cited Father for indirect contempt of the agreed court order for willful nonpayment of his $1560 obligation toward V.L.'s spring 2013 expenses. The court also denied his motion to modify his college contribution. Father now appeals.[1] Additional facts will be provided as necessary.

## Discussion and Decision

### Standard of Review

Father appeals the trial court's decision to cite him for indirect contempt as well as its denial of his motion to modify his educational expense obligation. We use an abuse of discretion standard when reviewing a trial court's determinations concerning both contempt citations and modifications of postsecondary educational expenses. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005) (contempt finding); *Svenstrup v. Svenstrup*, 981 N.E.2d 138, 143 (Ind. Ct. App. 2012) (postsecondary educational expenses). An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *Bales v. Bales*, 801

---

[1] The appellant's appendix contains a reproduction of the transcript from the May 14, 2013 hearing. We remind counsel that Indiana Appellate Rule 50(F) states that the "parties should not reproduce any portion of the Transcript in the Appendix." We also note that Father's brief contains an entire reproduction of the chronological case summary, which should be contained only in the appendix. Ind. Appellate Rules 46, 50.

N.E.2d 196, 198 (Ind. Ct. App. 2004), *trans. denied.* In conducting our review, we neither reweigh evidence nor judge witness credibility. *Ramsey v. Ramsey*, 863 N.E.2d 1232, 1237 (Ind. Ct. App. 2007). Rather, we consider only the evidence and reasonable inferences favorable to the judgment. *Bales*, 801 N.E.2d at 198.

We note that Mother has failed to file an appellee's brief. In cases where the appellee fails to submit a brief, we will not undertake the burden of developing arguments on her behalf. *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). Instead, we apply a less stringent standard of review and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it." *Id.*

### Section 1 – Contempt Citation

Father contends that the trial court abused its discretion in citing him for indirect contempt for failing to pay his $1560 educational expense obligation for V.L.'s spring 2013 semester. To hold a party in contempt for violating a court order, the trial court must find that the party acted in "willful disobedience" of an order commanding him to do or refrain from doing an act. *Norris*, 833 N.E.2d at 1029. The party accused of contempt bears the burden of demonstrating that his violation was not willful. *Id.*

Here, the sequence of filings and orders is crucial in evaluating the willfulness of Father's disobedience. First, on November 17, 2010, the trial court issued an agreed order pursuant to which Father became obligated to pay V.L.'s college expenses in the amount of $1160 for V.L.'s fall 2010 semester and $1560 for spring 2011 and for each semester thereafter. Appellant's App. at 24. The record shows that Father paid his obligation for three

4

semesters (fall 2010 through fall 2011) according to the terms of the agreed order. He did not contribute at all to V.L.'s spring 2012 or fall 2012 expenses.[2] Second, in November 2012, Father filed a petition to emancipate and terminate college expenses, which the trial court denied on January 7, 2013, after a hearing. Meanwhile, V.L. enrolled in twelve credit hours of coursework for the spring 2013 semester, yet despite the trial court's denial of his petition to terminate college expenses, Father did not pay his $1560 obligation for V.L.'s spring 2013 expenses. Third, having not received payment by February 6, 2013, as required, Mother filed a verified motion for contempt on February 22, 2013. Fourth, on April 4, 2013, Father filed a petition to modify college contribution. Finally, on May 14, 2013, the trial court held a hearing, addressed both parties' contentions, held Father in contempt, and denied his motion to modify his college contribution obligation.

Father challenges the trial court's finding that he engaged in willful disobedience sufficient to support a contempt citation. At the May 2013 hearing, V.L.'s college transcript was introduced. The transcript shows her grades and coursework up to the print date of April 22, 2013. It shows that she was enrolled in twelve credit hours of coursework for the spring 2013 semester. Father asserts that he did not act willfully in refusing to pay his spring 2013 obligation because as of the time of the hearing, V.L. had not yet *earned* the credits for that semester. In other words, he claims that V.L.'s fulltime status could not be known until she

---

[2] Father cites V.L.'s failure to take a twelve-credit class load as support for his failure to pay for the 2012 semesters. The contempt citation does not cover Father's nonpayment of his obligation for those semesters. Instead, it cites him for failure to pay his obligation for V.L.'s spring *2013* semester, when she was enrolled in twelve hours of coursework. Notwithstanding, as discussed in Section 2 of this decision, the agreed order did not define fulltime student status as requiring V.L. to take a twelve-hour class load every semester.

completed the semester. However, the agreed order requires that Father pay his $1560 obligation "in lump sum within thirty (30) days *of semester commencement*." Appellant's App. at 24 (emphasis added). Thus, the obligation clearly was not dependent upon V.L.'s completion of any given semester. In November 2012, Father agreed to this arrangement, which was reduced to an order, and paid his obligation for three semesters without claiming that the credits first had to be earned. He knew the requirements, yet he did not pay his obligation for spring 2013. Based on the foregoing, we conclude that Father failed to establish prima facie error in the trial court's determination that he acted willfully in failing to pay his obligation toward V.L.'s spring 2013 semester by the required date. Consequently, we affirm the contempt citation.

## Section 2 – Postsecondary Educational Expenses

Father also contends that the trial court abused its discretion in denying his motion to modify his postsecondary expense obligation. *See* Ind. Code § 31-16-6-2 (stating that child support or educational support order may include amounts for child's education at postsecondary educational institutions). Pursuant to the November 2010 agreed order, Father was obligated to pay $1160 for V.L.'s fall 2010 semester and $1560 for her spring 2011 semester "and for each semester thereafter." Appellant's App. at 24. Payments were to be made to Mother through the child support office "in lump sum within thirty (30) days of semester commencement." *Id.* The agreement also stated, "[V.L.] to remain full-time student and maintain no less than a 'C' average. [V.L.] to provide both parents with periodic grade reports." *Id.*

Father sought to modify his postsecondary educational expense obligation on the basis of (1) a change in his financial circumstances; and (2) V.L.'s failure to meet the requirements specified in the agreed order. With respect to Father's financial circumstances, he cites the loss of one of his two jobs, which accounted for $15,000 to $17,000 in annual income, as well as his decision to file Chapter 13 bankruptcy. He testified that his net take-home pay from his fire department job is $570 weekly. Tr. at 21. On direct examination, he stated that he had only $44.80 left in his pocket each month and referenced a bankruptcy worksheet from his trustee. *Id*. The worksheet is not included in the record, however, and there is no indication that it was ever formally offered as evidence. In denying Father's request for a modification on this basis, the trial court noted that the agreed order preceded Father's bankruptcy petition and was for a sum certain; that being in the nature of support, this obligation was considered at least a priority payment (if not nondischargeable) in bankruptcy; and that Father's financial setbacks and bankruptcy preceded his January 2013 hearing on his petition for emancipation and termination of college expenses and, as such, were or should have been raised at that hearing. *Id*. at 33. We find no abuse of discretion in the trial court's treatment of changes in Father's financial circumstances.

Father also asserts that he should be relieved of his college expense obligation based on V.L.'s failure to meet the academic specifications outlined in the agreed order, i.e., "Minor child to remain full-time student and maintain no less than a 'C' average. Child to provide both parents with periodic grade reports." *Id*. First, with respect to V.L.'s periodic grade reports, Father claims that V.L. failed to keep him apprised of her grades as she

7

progressed past her freshman year. The record shows that V.L. had given him instructions on how to access her grades online, but that Father could not successfully navigate the process. Father also testified that while he had repeatedly asked V.L. for her grades, she was no longer sending them to him by certified mail as she had during her freshman year. When asked why he did not contact Mother to obtain the information, he stated that he did not want to talk to her. Tr. at 26. With respect to V.L.'s grades, we note that the agreed order specifies neither a method nor a frequency (other than "periodic") of relaying grade information, that Father was given the means to access the information, and that maintenance of at least a "C" average is clearly not an issue since V.L.'s college transcript shows that she has 3.0 cumulative grade point average in pre-nursing. Appellant's App. at 25-26. Father's arguments amount to invitations to reweigh evidence, which we may not do.

Finally, to the extent that Father claims that V.L. has not maintained her status as a fulltime student, we note the following: (1) there is no evidence, either in the agreed order, the transcript, or any other document, defining "fulltime" as twelve hours; (2) as previously discussed, V.L. was enrolled in twelve hours of coursework at the time of the hearing; and (3) the trial court used the information contained in V.L.'s transcript to conclude that "for all practical purposes, she is a fulltime student." *See* Tr. at 35-36 (stating that she had completed fifty-six hours in five semesters and was currently taking twelve hours). The trial court also noted that Father had already presented his arguments at the January 2013 hearing on his petition to emancipate and terminate college expenses and was "barred from doing it

8

piecemeal … until you've run out of grounds to challenge it." *Id*. at 34.  In short, Father has failed to demonstrate prima facie error.  Accordingly, we affirm.

Affirmed.

BAKER, J., and NAJAM, J., concur.