## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 13 2017, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffry G. Price
Peru, Indiana

ATTORNEY FOR APPELLEE

Rebecca R. Vent
McIntyre Hilligoss Vent O'Keefe &
Welke
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lora L. (Padilla) Goodman, *Appellant-Petitioner*, <br><br> v. <br><br> Carlos J. Padilla, *Appellee-Plaintiff*. | October 13, 2017 <br><br> Court of Appeals Case No. 52A05-1701-DR-203 <br><br> Appeal from the Miami Superior Court <br><br> The Honorable J. David Grund, Judge <br><br> Trial Court Cause No. 52D01-10-DR-348 |

**Brown, Judge.**

[1] Lora L. (Padilla) Goodman ("Mother") appeals the trial court's order that Carlos J. Padilla ("Father") is not required to make any further child support and college expense payments due to overpayment. She raises two issues which we consolidate and restate as whether the trial court erred in determining that Father paid the child support judgments against him and in granting Father's petition for the elimination of college expenses. We affirm.

## Facts and Procedural History

[2] Mother and Father are the parents of three adult children: Caleb, born August 13, 1991, Jessa, born November 8, 1993, and Silas, born October 16, 1995 (collectively, the "Children"). In October 2000, Mother filed a petition for dissolution of marriage, and a provisional order approved by the court on October 12, 2000, ordered Father to pay $250 per week in child support.

[3] In July 2003, the court entered a decree of dissolution ordering Father to pay child support to Mother in the amount of $285.09 per week beginning July 17, 2003. The court ordered Father to pay 15% of his gross overtime pay in addition to the weekly child support payment and made this payment retroactive to August 24, 2001. The court also ordered Father to provide health, dental, optical, prescription, and orthodontia insurance for the Children through his employer and pay 73% of these expenses and non-prescription and health care expenses not otherwise paid by health insurance exceeding $1,026.48 annually. It ordered Father to pay $12,609.62 with interest of 8% per year until paid in full.

[4] On March 26, 2004, the court issued a judgment against Father in the amount of $14,630.02, which included $10,617.76 in arrears for non-payment of overtime income for the period of August 2001 to February 29, 2004, $1,878.67 for the Children's orthodontic work, and expenses related to Mother attending the hearing and her attorney fees in the amount of $2,133.59.

[5] On March 4, 2010, the court found Father in contempt in part for failure: to provide Mother notification of change in medical insurance coverage; keep Children covered with health, dental, orthodontic and optical insurance; and pay his percentage share of uninsured medical expenses for the period of 2004 to 2006. As sanction for this finding, Father was ordered to pay the sum of $13,428.03 for the following expenses: $72.96 for 2004 medical expenses; $4,449.63 for 2006 medical expenses; $169.58 for medical expenses incurred by Mother for his failure to provide insurance cards; $7,654.77 in uninsured medical expenses resulting in his not maintaining health insurance for Children; and $1,081.09 for 2009 medical expenses. It ordered Father to pay Mother's attorney fees in the amount of $3,000. The court also found that "the judgment calculation regarding the Court's previous judgment totaling $8,365.11 is the correct judgment calculation as of February 4, 2010." Appellant's Appendix Volume II at 55.

[6] An entry dated July 22, 2010, in the chronological case summary indicates that the court entered an order modifying Father's child support to $187 per week beginning January 15, 2010, and finding that Father owed a child support arrearage to Mother in the amount of $8,059.52 as of April 28, 2010. The entry

also indicates that the court ordered Father to pay Mother's attorney fees in the amount of $2,000 within 180 days of the order's date.

[7] On February 9, 2011, Mother filed a Release of Judgment acknowledging the receipt of payment in full from Father of the July 22, 2010 judgment pursuant to which Father was to pay Mother $8,059.52 in principal plus interest. The release stated that it "[i]n no way . . . serve[s] as a release of the July 17, 2003 judgment or the March 4, 2010 judgment that also were entered against [Father] and in favor of [Mother] . . . ." *Id.* at 56.

[8] A document titled "ORDER," dated August 25, 2011, and signed only by Father, states that Mother and Father were both in agreement that Father owed $11,637 for Caleb's 2011-2012 college expenses, that Father agreed to make payment arrangements with Goshen College to pay $3,137 by May 20, 2012, and that Father agreed to pay the remaining $8,500 to repay Caleb's loans taken out for Father's portion by making minimum payments of $215 by the fifteenth of every month to Mother until paid in full, with such payments not beginning until June 15, 2012. *Id.* at 58.

[9] An Agreed Order Book Entry dated October 13, 2013 signed by the parties' attorneys and the trial court states that Caleb turned twenty-one and was effectively emancipated, Jessa turned nineteen and was also effectively emancipated, and that Caleb and Jessa were attending college. The entry stated Father's weekly child support order should be modified to $143 per week beginning November 10, 2012; following Silas's emancipation, Father's

"weekly payment of $125.00 shall continue" to be withheld from Father's pay as a garnishment and applied to his outstanding judgments beginning with the application of payments to the July 13, 2003 judgment; Father's arrearage as of July 1, 2013, was $2,133 and that this amount gave Father credit for all payments made through the child support clerk and the difference in payment amounts of $187 to $125 from November 9, 2012 to July 1, 2013; Father would not be required to make payments toward outstanding judgments until Silas's emancipation; and Father would pay one-half, but no more than $2,000 per semester for Caleb and Jessa each towards their college expenses as well as continuing to make monthly payments of $215 for Caleb's outstanding college loan "per the 'Order' signed by Father on August 25, 2011. *Id.* at 60.

[10] On June 19, 2013, Mother filed a petition to renew judgment.[1] On November 22, 2013, the court granted Mother's petition to renew judgment and stated that it granted Mother's request "to renew the Judgment entered against [Father] in the amount of $12,609.62 on July 17, 2013 and in favor of [Mother]. Therefore, the balance of this Judgment is $4,981.47 as of June 17, 2013." *Id.* at 63.

[11] An Agreed Order Book Entry dated September 26, 2014, states: Father would "pay one-half of Silas' post-secondary education expenses after all grants and scholarships are applied the first year and then one-half but no more than $2,500 per following semester"; Father would "pay his part of college expenses

---

[1] The record does not contain a copy of Mother's petition.

after being provided documentation of his portion in an amount of $250 each week"; Father's "regular child support will cease"; and Father owed $5,908.02 for Caleb and Jessa's college expenses. *Id.* at 67-68.

[12] On March 6, 2015, the court entered an Amended Agreed Order Book Entry signed by both parties, which provides in part:

> 1. [Father] agrees to, in support/maintenance of the child; pay one-half of all Silas' post-secondary education expenses after all grants and scholarships are applied the first year and then one-half but no more than $2,500 per following semester after all grants and scholarships are applied.
>
> 2. [Father] agrees to pay his part of the college expenses after being provided documentation of his portion in an amount of $250.00 each week, beginning Friday, August 15, 2014 . . . .
>
> 3. [Father's] regular child support will cease after the signing of this order, and no modification will be made retroactive due to [Mother's] short term disability.
>
> 4. [Father] agrees he owes $5,908.02 for Caleb and Jessa's college expenses for Fall 2013 and Spring 2014 semesters. [Father] will deliver $3,000.00 in two checks in the amount of $2,000.00 for one and $1,000.00 for the other, to [Mother] no later than Friday, August 15, 2014, and September 1, 2014, to be applied to these outstanding college expenses for Caleb and Jessa, with credit to be given to [Father]. Thereafter, this amount would be reduced to a judgment in support/maintenance of the children.
>
> 5. [Father] agrees that a weekly payment of $150.00 by EFT/ACH from his bank account to [Mother]'s bank account be

withheld from his pay as a garnishment and applied to [Father's] outstanding judgments . . . .

6. [Father] agrees that the first $1,000 from his annual federal tax refund starting in 2014 as well as the first $1,000 from any bonuses received from his employer will be relinquished to [Mother] within 5 days of receipt.

7. [Mother] will provide any significant college communication or information including grades for each of the children to [Father] within one week of receipt.

8. [Father] agrees if he does not comply with any agreement in this order and other prior orders, he will be responsible for [Mother's] attorney fees in attempts to rectify the situation(s).

*Id.* at 64-65.[2]

[13]   In a letter delivered to Father on November 20, 2015, Mother wrote that "[i]t will be a while before I can get Silas' spring college expenses to you," that she "may just wait until Silas' contract is up on his apartment," and "[t]his will give me time to refigure all his expenses and I will then have all his utility bills to have a total for everything instead of submitting expenses to you every month."

---

[2] The Amended Agreed Order Book Entry contains signatures by Father's attorney and Mother and the date listed by each signature is February 27, 2015. The Amended Agreed Order Book Entry also states: "SO ORDERED this 6 day of March, 2014." Appellant's Appendix Volume II at 66. The chronological case summary contains an entry dated March 12, 2015, which states: "Amended Agreed Order Book Entry submitted and APPROVED on March 6, 2015." *Id.* at 32. Father notes in his brief that the date of March 6, 2014, instead of 2015 constitutes a scrivener's error. We agree.

Petitioner's Exhibit 9. Mother also wrote "if you'd rather me send you bits and pieces as I get them, let me know." *Id.*

[14] On December 3, 2015, Father filed a Petition to Determine Child Support and College Expense Payments and Arrearages and Petition for Reduction or Elimination of College Expenses. On January 28, 2016, Mother petitioned the court to hold Father in contempt.[3]

[15] On September 28, 2016, a hearing was held and the court heard testimony from Mother and Father. Mother testified that Jessa was married, has one child, and was enrolled in the Indiana College of Sports and Medical Massage, and that Jessa and her husband lived with her. She testified that Silas graduated from high school in 2014, completed two years of college, but was not enrolled because she "needed to pay on something for him and I told him he needed to wait a little bit . . . ." Transcript at 8. She testified that she wanted Father to pay college expenses for Jessa and Silas and a past college loan related to Caleb, but was not asking for any future college expenses for Caleb. She stated that she provided information on college expenses to Father in August 2015 after she had complications from brain surgery, that she sent a certified letter in November 2015 informing Father of her illness and her intention of providing documentation to him of the Children's college expenses in the future. She

_____

[3] The record does not contain a copy of Father's December 3, 2015 petition or Mother's petition to hold Father in contempt.

testified that she communicated with Father about college expenses on September 26, 2016.

[16] Father testified that he received an email from Mother detailing additional college expenses in August 2015 and again the Monday prior to the hearing. He testified that he paid $238,697.43, that he should have paid $179,980, and that he overpaid $58,717. He stated that Silas has a different last name than him, that he does not have a relationship with the Children, and that they have not called him for Father's Day, his birthday, or Christmas. On cross-examination, Father stated that he had not tried to contact his Children. He stated that he completed the counseling mentioned in the divorce decree, and when asked, "[b]ut you didn't restart your visitation with the children," Father answered, "No they were out of state." *Id.* at 25. When asked, "[b]ut haven't they been back in the State of Indiana for quite some time," Father answered affirmatively. *Id.* He testified that he stopped paying Mother for college expenses at some point and continued to have the ability to pay.

[17] On December 22, 2016, the court entered an order stating in part:

> The court, having considered the testimony and evidence presented by the parties, the prior history of the case and applicable law, now finds as follows:
>
> * * * * *
>
> 3. The Dissolution Decree entered a judgment against Father in the sum of $12,609.62. The judgment docket maintained by the Miami County Clerk of Court shows this judgment satisfied May

19, 2009, yet due to interest, was renewed in the sum of $4,981.47 on November 22, 2013.

4. On March 26, 2004, Father was found to be in arrears for the non-payment of overtime earnings between 2001 and 2004 in the sum of $10,617.76, plus orthodontic work for the children in the sum of $1,878.67, for a total of $12,496.43. Father satisfied the total amount due by transferring said funds by QDRO on November 22, 2004.

5. On February 4, 2010, the court entered two judgments against Father. The first judgment was for $13,428.03. The second judgment was for $8,365.11, for a total of $21,793.14. Father satisfied the second judgment in the sum of $8,365.11 on 1/18/11 by paying $8,400 as evidenced by the child support payment history introduced into evidence in Father's Exhibit A.

6. On August 25, 2011, the parties agreed Father would pay Caleb's college loans in the sum of $8,500 at the rate of $215 per month, paid directly to Mother. This amount having never been ordered by the court. Father satisfied this amount as evidenced by checks Father paid directly to Mother and introduced into evidence in Father's Exhibit A.

7. On October 25, 2013, the court entered an order for a judgment on child support in the sum of $2,133. Father satisfied this amount by overpaying his child support obligation as evidenced by the child support payment history introduced into evidence in Father's Exhibit A.

8. On March 6, 2015,[4] the court entered an order for judgment on Caleb and Jessa's college expenses in the sum of $5,908.02. Father agreed to satisfy this amount by paying two checks in the amount of $2,000 and $1,000 by August 15, 2014 and the remaining balance of $2,908.02 to be paid at the rate of $150 per week. Father satisfied the two oldest children's college expenses in the sum of $5,908.02 by paying Mother directly as evidenced by the records in Father's Exhibit A.

9. In addition to the above agreements, orders and judgments, Father also owed weekly child support for all three children in the sum of $285.00 from July 17, 2003 through July 22, 2010 for a total of $105,768.39. Father owed child support for two of the three children in the sum of $187 per week from July 23, 2010 through November 10, 2012 for a total of $22,253. Father then owed $143 per week for one child from November 11, 2012 through October 16, 2014 for a total of $14,443. Father's total child support obligation between July 17, 2003 (Dissolution Decree) and October 16, 2014 (Silas's emancipation) totaled $142,464.39. The Court established in its' [sic] order of October 25, 2013 that Father had a child support arrearage of $2,133.00 as of July 1, 2013. The order of October 25, 2013 was the last order addressing Father's support arrearage and established the overall support arrearage amount going forward for purposes of calculation.

10. The total amount due by Father for judgments, agreements, and court orders was $55,925.25.

---

[4] Mother asserts in her brief that the trial court's December 22, 2016 order erroneously referred to this order as being entered on March 6, 2015. As previously noted, based upon the date listed by each signature of February 27, 2015, and the entry in the chronological case summary dated March 12, 2015, we conclude that the date of 2014 in the March 6th order appears to have been a scrivener's error.

11. The court finds the total due by Father for child support beginning July 1, 2013 date of last arrearage calculation was $11,428.00 plus judgments and court orders in the sum of $24,317.52, for a total amount owed by Father in the sum of $35,745.52.

12. The child support payment history from the Miami County Clerk of Court showed on pages 1-22 that Father paid $124,174.64. The child support payment history from the Miami County Clerk of Court showed on pages 22-33 that Father paid an additional $69,123.17. The judgment docket maintained by the Miami County Clerk of the Court showed that Father paid a total of $22,091.62 to Mother. The total amount Father paid through the Miami County Clerk was $215,389.43.

13. In addition to the funds paid through the Miami County Clerk's Office, Father also paid Mother either directly or through electronic funds transfer the total sum of $28,600. None of these payments, either made through the Clerk of the Court or directly to Mother, were disputed by Mother and were admitted into evidence through Father's Exhibit A.

14. When subtracting Father's payments through the Clerk of the Court and what he paid directly to Mother from what Father owed, the court finds Father is overpaid in the sum $36,598.60. A summary as to the court's calculations is attached hereto.

15. The court finds [Father] has satisfied all judgments with interest, all child support and all college expenses incurred by the children.

16. The court finds that there has been a substantial change of circumstances warranting modification of the Court's orders for the following reasons: Father owes no further college expenses for the children in that the two oldest children are married. All

three children have not attended college for significant periods of time. The middle child, Jessa, enrolled in post-secondary education currently is married and a housewife. Furthermore, Mother was obligated to provide Father with the children's grades and college expenses as set forth in their March 6, 2015 Agreement, yet she failed to do so after the Spring Semester of 2015. None of the children have a relationship with their father and do not communicate with him in any fashion. The children did not include him in their choice for college, did not keep him informed of their educational goals or pursuits, did not provide him with their grades. Father's Petition for the Elimination of College Expenses is granted. Father is relieved of any future obligation to contribute to his adult children's college expenses for the reasons stated.

17. Mother filed a citation alleging Father failed to pay college expenses per the Court's order. The Court finds that Father voluntarily and intentionally discontinued making the required payments without Court order relieving him of the obligation while having income to pay the same. The Court finds Father in Contempt for this willful violation of the Court's order. The Court orders Father to pay $1000.00 in Mother's attorney fees to attorney Elizabeth Price as a sanction and to purge himself of contempt. This payment to be made within 90 days. Although Mother never filed anything in writing, Mother verbally requested the court to order Father to pay a portion of Jessa's expenses for massage school. That request is also denied for the reasons stated above.

Appellant's Appendix Volume II at 82-86. The court attached a document to the order providing a summary of Father's obligations, a summary of Father's payments, and acknowledging the agreement between the parties.

*Discussion*

The issue is whether the trial court erred in determining Father paid the child support judgments and in granting his petition for the elimination of college expenses. Where, as here, the trial court issued findings of fact and conclusions, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed *de novo*. *Id.* We set aside a trial court's judgment only if it is clearly erroneous. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.*

Mother argues that this court's confidence that the findings are the result of a considered judgment is eroded because the trial court adopted, wholesale, the findings and conclusions offered by Father. Under the heading, "STANDARD OF REVIEW," Mother points to a number of alleged errors in the trial court's order. Appellant's Brief at 14. She contends that the trial court's conclusion that Father had satisfied all judgments with interest and all child support and college expenses was clearly erroneous. Mother argues that the trial court's finding that Father had overpaid directly contradicted the court's finding that Father was in contempt. She asserts that the purpose of child support is to provide regular and uninterrupted support for the children and that voluntary

overpayments are properly treated as gratuities to the children and no credit is granted. She also contends that Father's exhibit and proposed order and ultimately the court's order ignored the October 12, 2000 Agreed Entry in which the court ordered Father to pay $250 per week.

[20] Father asserts that the trial court's order differs in several respects from his proposed order, and he argues that it is not surprising that the court followed his proposed order with respect to further college expenses because it was undisputed that the two oldest children were married and both had been college dropouts for a significant period of time. He also argues that Mother admitted she failed to provide the Children's grades and college expenses as she was mandated to do in the March 6, 2015 order. He contends that the court's calculations were supported by his bank records and records from the Miami County Clerk. He also argues that the court properly found that there was a substantial change in circumstances warranting the termination of his duty to continue supporting his adult children's education.

[21] To the extent Mother argues that the court adopted Father's proposed findings and conclusions wholesale, we observe that generally "[a]lthough we do not apply an altered standard of review when a trial court adopts a party's findings verbatim, 'near verbatim reproductions may appropriately justify cautious appellate scrutiny.'" *Carpenter v. Carpenter*, 891 N.E.2d 587, 593 (Ind. Ct. App. 2008) (quoting *Stevens v. State*, 770 N.E.2d 739, 762 (Ind. 2002), *reh'g denied*, *cert. denied*, 540 U.S. 830, 124 S. Ct. 69 (2003)). We also observe that the court's December 22, 2016 order altered Father's proposed findings in a number of

ways including: the amount Father paid according to the Miami County Clerk; the amount Father paid through electronic funds transfer; and the amount Father overpaid. The court also found Father in contempt and ordered him to pay $1,000 for Mother's attorney fees.

[22]  Mother appears to challenge the court's finding that a judgment was renewed in the sum of $4,981.47 on November 22, 2013. However, the record reveals that the court granted Mother's petition to renew judgment on November 22, 2013, and stated that it granted Mother's request "to renew the Judgment entered against [Father] in the amount of $12,609.62 on July 17, 2013 and in favor of [Mother]. Therefore, the balance of this Judgment is $4,981.47 as of June 17, 2013." Appellant's Appendix Volume II at 63.

[23]  Mother points to Petitioner's Exhibit 13, which includes a spreadsheet with two rows containing information and lists an amount of $8,059.52 as a "Balance." Petitioner's Exhibit 13. After pointing to Petitioner's Exhibit 13, Mother then states: "Therefore, the trial court has miscalculated the college expense that [Father] should have paid and has erred, as a matter of law, in determining that he overpaid his obligation for the children." Appellant's Brief at 20. We cannot say that Petitioner's Exhibit 13 renders the court's order clearly erroneous. We also observe that Father testified that he believed he overpaid in terms of college expenses and child support and that the court admitted Father's Exhibit A as a summary of his testimony.

[24] With respect to Mother's argument that the trial court's finding that Father had overpaid contradicted its finding that Father was in contempt, we observe that this Court has previously held that "child support payments cannot be applied prospectively to support not yet due at the time of the overpayment." *Drwecki v. Drwecki*, 782 N.E.2d 440, 448 (Ind. Ct. App. 2003) (quoting *Matson v. Matson*, 569 N.E.2d 732, 733 (Ind. Ct. App. 1991)).

> The rationale behind the rule is that it would be unjust for a non-custodial parent to voluntarily build up a substantial credit and then suddenly refuse to make support payments for a period of time. This would thwart the court's purpose of providing regular, uninterrupted income for the benefit of the children. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.

*Id.* at 448-449 (quoting *Matson*, 569 N.E.2d at 733). Mother does not argue or point to the record to show that Father improperly paid more than he was required to pay under certain court orders or improperly built up a substantial credit. We note that the trial court did not order Father to recoup any excess payments.[5]

[25] As for Mother's argument that the trial court failed to account for the October 12, 2000 order to pay child support and improperly began its calculation of Father's child support with the July 2013 finding of arrearage of $2,133, we observe that the Agreed Order Book Entry dated October 13, 2013, stated that

---

[5] Father does not appeal the finding of contempt.

"[a]s of July 1, 2013, [Father's] current arrearage is $2,133.00." Appellant's Appendix at Volume II at 60.

[26]     Mother also asserts that the trial court notes judgments for two of the children's college expenses in the amount of $5,908.02 and that the court noted at the bottom of the same attachment that Father was required to pay $8,500 for Caleb's college loans. Mother does not appear to argue that these amounts are incorrect,[6] but contends that "[y]et, incredibly, the trial court concluded that [Father] had paid all amounts which he owed for the children's college expenses." Appellant's Brief at 24. The trial court's order refers to the amount of $8,500 and states that "Father satisfied this amount as evidenced by checks paid directly to Mother and introduced into evidence in Father's Exhibit A." *Id.* at 83. We cannot say that Mother has developed a cogent argument regarding how the court's inclusion of these amounts in the summary sheet attached to the order conflicts with its conclusion that Father has satisfied all judgments or that the checks included in Respondent's Exhibit A did not support the court's finding. Accordingly, this argument is waived.

---

[6] The amounts appear to have support in the record. The August 25, 2011 document signed by Father states that he agreed "to pay remaining $8,500, to repay Caleb's loans . . . ." Appellant's Appendix Volume II at 58. The March 6, 2015 Amended Agreed Order Book Entry provided that Father "agrees he owes $5,908.02 for Caleb and Jessa's college expenses for Fall 2013 and Spring 2014 semesters." *Id.* at 65.

[27] Mother argues that the trial court made no mention in its order or attached summary of Father's obligations to assist in the college expenses for Silas. In the March 6, 2015 Amended Agreed Order Book Entry, the court found that Father agreed to "pay one-half of all Silas' post-secondary education expenses after all grants and scholarships are applied the first year and then one-half but no more than $2,500 per following semester after all grants and scholarships are applied." Appellant's Appendix Volume II at 64. The order also stated that Father "agrees to pay his part of the college expenses *after being provided documentation* of his portion in an amount of $250.00 each week, beginning Friday, August 15, 2014." *Id.* at 64 (emphasis added). At the hearing, Mother testified that the last time Silas was enrolled in school was spring of 2016. On cross-examination, she indicated that she had not provided Father with any documentation regarding what he needed to pay since August 2015 and that she did not receive a court order extending the time that she could have to provide him with the information. Father testified that he paid Mother an amount for Silas's college expenses through March 2016 despite the fact he had not received any verification of Silas's college expenses for the spring semester. We cannot say that the trial court clearly erred in finding that the judgment had been satisfied. Nor can we say that Mother has demonstrated that the court erred in finding that Father overpaid in the sum $36,598.60.

[28] With respect to Mother's assertion that the court's conclusion that Father was not required to pay future college expenses was clearly erroneous, we observe that Ind. Code § 31-16-6-2 "gives guidance regarding contribution toward post-

secondary educational expenses, listing certain factors to take into account, such as 'the child's aptitude and ability,' 'the child's reasonable ability to contribute to educational expenses,' and 'the ability of each parent to meet these expenses,' among other things." *Hirsch v. Oliver*, 970 N.E.2d 651, 660 (Ind. 2012). "Child Support Guideline 8(b) lists expenses that may be included within a post-secondary educational expense order, such as tuition, books, lab fees, supplies, student activity fees, room and board under certain circumstances, transportation, car insurance, clothing, entertainment, and incidental expenses." *Id.* at 661. "This guideline also explicitly states that '[i]t is discretionary with the court to award post-secondary educational expenses and in what amount.'" *Id.* (quoting Child Supp. G. 8(b)). It continues that the court should "weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Child Supp. G. 8(b).

[29] The modification of a child support order is governed by Ind. Code § 31-16-8-1, which provides that modification may be made "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable . . . ." "Generally, provisions for the payment of educational expenses are also modifiable because educational expenses are in the nature of child support." *Svenstrup v. Svenstrup*, 981 N.E.2d 138, 145 (Ind. Ct. App. 2012) (citing *Martin v. Martin*, 495 N.E.2d 523, 525 (Ind. 1986) ("Because Ind. Code § 31-1-11.5-17 [now Ind. Code § 31-16-8-1] expressly permits modification of 'an order with respect to child support,' we hold that educational support orders not only

continue following emancipation and age 21, but also are subject to further modification.").

[30] The record reveals that Jessa was married and her husband worked full-time. Silas was not in college at the time of the hearing. Moreover, in light of Father's overpayment of $36,598.60 and our determination that Mother has not demonstrated that Father improperly paid more than he was required to pay or improperly built up a substantial credit, we cannot say that the trial court's order was clearly erroneous.

## *Conclusion*

[31] For the foregoing reasons, we affirm the trial court's order.

[32] Affirmed.

May, J., and Pyle J., concur.